[No. 14349.   Department Two. — September 1, 1891.]

CHARLES WIXOM ET AL., APPELLANTS, v. HENRY GOODCELL, JR., ET AL., RESPONDENTS.

REVOKING PROBATE OF WILL — MENTAL INCAPACITY OF TESTATRIX — EVIDENCE OF PHYSICIAN — CROSS-EXAMINATION. — In proceedings to revoke the probate of a will on the ground of the mental incapacity of the testatrix at the time of its alleged execution, where a physician who had attended the testatrix for a long time prior to the making of the will testified that the winter before the will was executed, and while he was her attending physician, she was in litigation with her sons respecting property which she had conveyed to them, and that he acted as her agent during that litigation, and that during that time he saw no evidence of failing mind or memory, and in his opinion both were good, and that she was competent to make a will, it is error for the court to sustain an objection to questions asked the witness, upon cross-examination, as to whether he had not asked another person to testify, in the action between the mother and sons, that she was not in her right mind, and had not said to that person that she was not in her right mind, and had not himself intended so to testify in that action.

EVIDENCE — LATITUDE OF CROSS-EXAMINATION. — Questions responsive to matters testified to in the direct examination of a witness should be allowed, for the purpose of testing the value of his testimony upon the subject in relation to which he testified in his examination in chief.

APPEAL from an order of the Superior Court of San Bernardino county denying a new trial.

The facts are stated in the opinion.

*Harris & Gregg*, and *Rolfe & Freeman*, for Appellants.

*Paris & Fox*, and *Goodcell & Leonard*, for Respondents.

FITZGERALD, C. — This proceeding was instituted under section 1327 of the Code of Civil Procedure to revoke the probate of the will of Betsey E. Cole, deceased, on the ground of incompetency by reason of mental incapacity at the time of its alleged execution. The plaintiffs are the children of the deceased children of testatrix, and as such claim an interest in her estate. The defendants, with the exception of the executors, are the children of testatrix, and legatees and devisees under the will.

The only issue submitted by the court to the jury was as to the mental capacity of the testatrix, and the finding of the jury thereon was as follows: "Was the deceased, Mrs. Betsey E. Cole, on the seventh day of May, 1887, the time of the execution of the alleged will, of sound and disposing mind?    A. Yes."

Plaintiffs then moved the court to set aside the verdict and grant a new trial, on the following grounds: "1. Insufficiency of the evidence to justify the verdict, and that it is against law; 2. Errors in law occurring at the trial, and excepted to by plaintiffs," — which motion was denied by the court.

This appeal is taken by plaintiffs from the order denying their motion for a new trial.

The facts necessary for a proper understanding of the points upon which the order herein must be reversed are as follows: —

In 1886 the testatrix conveyed to her sons, Wallace and Jasper Wixom, all of her property, with the understanding, says Willard in his deposition read at the trial, "that she would make a will and we would execute it." He further testified "that when she heard that Jasper

was not going to do as agreed, she brought suit to recover it; it was finally arranged during the winter of 1886–87; we deeded her part of the property back, and kept part for our share; I got twenty-one thousand dollars for the part I had, a short time afterwards."

The ground upon which the action was brought for the recovery of this property from her sons is not shown by the record, but it does appear that while that case was pending she employed as her agent, to look after her interests in connection with that litigation, one Dr. A. Thompson, who was then, and for a long time at and before the making of the will had been, her attending physician.

The case was settled by compromise in the winter of 1886–87, and on the seventh day of May following, she being then seventy-six years of age, executed the will in question, by the express terms of which her entire estate was devised to those of her children who are defendants in this action. She intentionally omitted to provide therein for plaintiffs, for the reason, stated in the will, "that each and all of them" — meaning her deceased children, of whom plaintiffs are the issue — "have received in my lifetime all the provision intended for them."

On this point one of the attorneys for the defendants testified as follows: " That she (testatrix) came to the office on the seventh day of May, 1887, to have her will drawn; that he told her she must make a just will as between her children; that she told him that was what she wanted to do; that she had given some of them their portions, and she wanted to leave what property she had to those that had had nothing." The will was signed "with her mark." The proof is clear, as we think, that her estate was not disposed of by the will upon the fair and equitable basis indicated by the expressions used by her in this conversation. But as the order herein must be reversed on other grounds, we do

not feel called upon to consider this subject further than is necessary to elucidate the points upon which we have based our decision.

At the trial, the Dr. A. Thompson referred to was sworn as a witness in behalf of defendants, and testified as follows: "That he was a physician of many years' experience; that he was acquainted with Mrs. Betsey E. Cole, formerly Mrs. Wixom; that during the winter of 1886-87, and the spring of 1887, he was her attending physician; that during that time she was in litigation with her sons, Jasper and Willard, over her property, which she had conveyed to them, and witness acted as her agent, having been employed by her in that litigation; that he saw her a great many times during that winter and spring, and he saw no evidence of failing mind or memory, and, in his opinion, both were good; she was entirely competent to attend to business and make a will; that he frequently conversed with her on business matters, and his opinion was based upon such conversations, and as a physician."

CROSS-EXAMINATION.

"Q. When Mrs. Cole had her trouble with her two sons, you acted in part for her, did you not? A. I did.

"Q. You were employed for that purpose? A. I will say so; yes, sir.

"Q. Did you not go to Mrs. Schyffe during that trouble, and ask her to testify that Mrs. Cole was not in her right mind?

"Mr. Paris. — Objected to as irrelevant, immaterial, and not responsive to the direct examination.

"The Court. — Objection sustained.

"Plaintiffs except.

"Q. During the spring of 1887, did you not, in the employ of Mrs. Cole, go to Mrs. Schyffe and say to her that Mrs. Cole was not in her right mind?

"Mr. Paris. — Same objection as before.

"*The Court.* — Sustained.

"Q. Did you not at that time, and during the time that you have testified that Mrs. Cole was in her right mind, in this case, — did you not intend to go upon the stand in the case between herself and her two sons, and testify that she was not in her right mind?

"*Mr. Paris.* — The same objection as before.

"*The Court.* — Same ruling.

"Plaintiffs excepted" to each of these rulings, and they are assigned as error.

From this it will be seen that the professional and business relations which this witness sustained towards the testatrix at and for a long time before the pretended execution of the will, and during the existence of the "trouble" with her sons, was of such a close and intimate character as to afford him greater facilities for forming a correct opinion as to her mental condition than was possessed by any other witness in the case. As a witness, he assumed to speak from personal acquaintance, business intercourse, and professional or scientific knowledge, and his opinion as to her mental capacity at the time of the alleged execution of the will was founded thereon.

The questions propounded to this witness on his cross-examination were clearly competent. They were strictly responsive to matters testified to in the direct examination, and should have been allowed for the purpose of testing the value of his testimony upon the subject in relation to which he testified in his examination in chief. And it is fair to presume that if he had been permitted to answer these questions, and had answered them in the affirmative, without giving a satisfactory explanation, his credibility as a witness might have been very seriously impaired. The jury was entitled to all the knowledge possessed by the witness on this subject, and if shortly before the making of the will, that is, during the time of her trouble with her sons, he was

then of the opinion that she was not of sound and disposing mind, they had a right to know what it was that caused so radical a change in his opinion in so short a period of time as to her mental condition.

We are clearly of the opinion that the rulings of the court in sustaining the objections to these questions was a prejudicial error, for which the order should be reversed, and a new trial granted, and we so advise.

BELCHER, C., and VANCLIEF, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the order is reversed, and a new trial ordered.