## JOHN BICE v. THE STATE.

*No. 1166.     Decided January 13th, 1897.*

1. **Rape—Age of Prosecutrix—Evidence of Collateral Facts to Establish the Age.**

On a trial for rape of a female, under fifteen years of age, where the age of the prosecutrix was in issue, it was admissible for a witness, who was testifying as to her age, to testify to collateral facts and circumstances which tended to impress upon his mind the facts connected with her birth and age.

2. **Same—Opinion Evidence Based Upon Comparison and Personal Appearance.**

On a trial for rape, where the age of the prosecutrix was an issue, it was competent for a witness to state, that at a certain time, when the prosecutrix was an infant, she could not have been over four or five months old, judging from a comparison of her appearance with the child of his brother's wife, who was on a visit to his father's house at the same time, and which last child he knew to be four or five months ol 1 at that time.

**3. Same.**

The testimony of a physician, who was well acquainted with the prosecutrix, was competent and admissible to the effect, that at the time of the alleged carnal intercourse, judging from the physical appearance, size and development of the prosecutrix, she was a young woman of about the age of seventeen or eighteen years.

**4. Same—Evidence as to Carnal Intercourse with Other Parties.**

On a trial for rape, where some evidence had been introduced with regard to the pregnancy of the prosecutrix; and she testified, that she had had carnal intercourse with no other man than defendant, and with him but one time only. Held: Competent to prove by a witness that he had seen the prosecutrix, on two occasions, in the act of carnal intercourse with one Jim K.

**5. Argument of Counsel.**

Statements by the prosecuting attorney in his argument, as to what he told the prosecutrix to do, and what she did, explanatory and supplementary to testimony which had been admitted, should not have been allowed by the court.

**6. Rape Upon a Female Under Fifteen Years of Age—Indictment.**

An indictment for rape upon a female under fifteen years of age, is fatally defective, which does not negative the fact, that said female is the wife of the accused. Following, Rice v. State, ante p. 36.

APPEAL from the District Court of Grayson. Tried below before Hon. DON A. BLISS.

Appeal from a conviction for rape of a female under the age of fifteen years; penalty, five years' imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*Gordon & Brown,* for appellant, filed an able and interesting brief.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of rape, and given five years in the penitentiary, and prosecutes this appeal. The indictment charges that the prosecutrix, Minnie Simmons, alias Minnie Cannon, was a female under the age of 15 years, and that the defendant made an assault upon her, and did then and there ravish and have carnal knowledge of the said Minnie Simmons, alias Minnie Cannon, against the peace and dignity of the State. As to her age, the prosecutrix testified that she was under 15 years of age in the fall of 1895, at the time of the alleged rape; that she was 14 years old in May before the occurrence. On cross-examination, she testified on this point that she knew she was 15 years old now, because she knew her age since she was a child; that she did not know the year of her birth; and that her mother told her age to her about a week before she got sick. The State also introduced one W. J. Hanna, who testified that he was a resident of North Carolina, and was a brother of the mother of the prosecutrix, and the prosecutrix was his niece; that she was born either in April or May, 1881. This witness testified that he knew her age from circumstances; that, among other things, he remembered that she was born the year that Garfield was shot; that her mother visited his father's house where he (witness) was then living; and that said prosecutrix was then a baby in arms, not more than four or five months old, from her appearance; and that he knew of another sister's baby who visited his father's house

at the same time, and that child was five or six months old, and, judging from the appearance of Minnie, she was about the same age as the other child.  As to the act of carnal intercourse, the prosecutrix testified:  "That her mother and an older sister (with whom she was living in Sherman) died perhaps a year before the occurrence.  That she continued living at the same place with her older sister until she died, and then she lived at different places.  That in the fall of 1895 she went to live with the defendant, who was residing in Sherman at the time.  That while living there, defendant and his wife and children and the prosecutrix all slept in the same room.  There were two beds in the room.  Defendant's wife slept in the bed in the northeast corner.  Defendant slept on the pallet on the floor, and prosecutrix slept in the bed in the southeast corner of the room, with the defendant's little child, two or three years of age.  That, shortly after she went there to live, defendant's wife gave birth to a child; and, while she was confined, defendant came to the bed of the prosecutrix, about 10 o'clock at night, and woke her up, by pulling up her clothes.  She told him to quit.  He did not say anything, but continued to pull up her clothes, and got on top of her, and had carnal intercourse with her.  That at first she told him to quit, but afterwards consented for him to do it.  That she did not make any outcry.  The reason she did not was because she did not know what to do.  That there was a lamp burning in the room at the time, but it was behind the box on the sewing machine, and her bed was in the dark.  She testified that this was the only time she ever had carnal intercourse with any person.  There is also in the record the testimony of two witnesses, to the effect that some time thereafter, when it appeared to them that the prosecutrix was enceinte, she stated that the defendant was the cause of it.  They then interviewed the defendant on the subject, and he stated that, if she was pregnant, the baby was his, and he would take care of it.  Appellant's wife testified that the act of carnal intercourse could not have occurred as stated by the prosecutrix; that she was in the same room at the time the rape is alleged to have occurred; that, at the time, she was very wakeful; the light shone all over the room, and defendant could not have had intercourse with the prosecutrix without her knowing of it, and it did not occur.  In the record there is testimony of several witnesses, to the effect, that the prosecutrix stated to them that she was 16 years old at the time when the alleged act of intercourse occurred.  The prosecutrix admitted that she stated this to John Glenn and Mr. Andrews, a policeman; that she told them this because she was afraid they would send her back to North Carolina, and leave her little brother here; but she stated that she did not remember telling Mrs. Prather, Mrs. Bice, Jim Keys, Mrs. Jim Keys, Mrs. Throckmorton, Mrs. Rube Neely, or Jim Potter, that she was 16 years old, either in July, August, September, October or November.  The statement of facts also discloses some testimony in regard to the pregnancy of the prosecutrix.  This is, in effect, a summary of the case.

W. J. Hanna was introduced as a witness for the State, and testified

as to the age of the prosecutrix. He testified that she was born either in April or May in the year 1881, and stated in that connection that the date of her birth was impressed on his mind by several circumstances. One was that in that year President Garfield was shot, and that he remembered that circumstance, and during that year the mother of the prosecutrix, who was his sister, was visiting at his father's, where witness was then living; that said prosecutrix was then a very small child, being nursed in her mother's arms. Another circumstance was that the wife of one of the brothers of the witness, who lived in the neighborhood, gave birth to a child about the 15th of April of that same year, and the mother of the child visited his father's house with the child when it was four or five months old, and at the same time his sister, the mother of the prosecutrix, was at his father's house with her baby, the prosecutrix. Another circumstance was that in the year 1881 he had a brother to marry about the 1st of August, and that it was about two weeks after his brother's marriage that the prosecutrix's mother visited his father's house. Appellant objected to all of this testimony of collateral facts, on the ground that the same was incompetent, was argumentative, and an opinion and conclusion of the witness. It will be observed that the main fact was the date of the birth of the prosecutrix, and the evidence of collateral facts was merely admitted as circumstances in the mind of the witness tending to fix the date of the birth of the prosecutrix and her age. It is frequently the case that an abstract or isolated fact, that could not be remembered of itself, is impressed upon the memory by incidents or collateral facts more or less intimately associated therewith in the mind of the witness. The force of these impressions as to the main fact will, of course depend more or less upon the logical sequence or connection with the incidental matters associated therewith. Human experience teaches us that certain ideas or thoughts are interlinked with classes of ideas or thoughts, and, according to mental philosophers, one idea or thought has its association with other ideas and thoughts, and one suggestion may become the prolific parent of a chain of ideas or thoughts. Of course, these become more or less cogent, as they appear to be interwoven, or there is a logical connection between them. If the mention of one fact appears to be associated with the main fact, and to be logically connected therewith, the mention thereof by the witness, in connection with the main fact, would furnish the jury with the reason for the recollection of the main fact, which would be more or less cogent as it appeared to be logically associated with the fact in question. The fact, however, that the connection of the incidents to the main fact appears to be weak, would not furnish a reason for the exclusion of the incident. But to suppose a case: If A. meets B. casually, and there is nothing to impress upon the mind of A. the day of their meeting, his relation of the fact, together with the date afterwards, might not be calculated to impress the jury with its truth, as there was nothing to fix in his memory the date. But if he states that it was on the 4th of July that he met him, and that it was at a cer-

tain public gathering, these will be circumstances to impress the day upon his mind; and, while they would serve the purpose of strengthening the recollection of the witness, at the same time these collateral circumstances would widen the scope of a cross-examination, and, if the date was not true, there would be greater latitude for contradiction. Mr. Rice, in his work on Evidence (see, 3 Rice, Ev., p. 336), says: "A witness is at liberty to state certain collateral facts that tend to fix some other fact, about which he is being questioned, in his memory; and it frequently occurs in examinations that the fact of having had a conversation concerning a certain matter is one of the surest methods of remembering the subject-matter called for." So, in our opinion, the court did not err in permitting the witness for the State to testify as to such collateral matters, which served to impress the main fact upon his recollection. The witness, Hanna, also testified that from the appearance of the child of his brother's wife, which he knew to be four or five months old at the time, and the appearance of the prosecutrix, Minnie Cannon, the child of his sister, she could not have been at the time of her visit to the house of his father, over four or five months old. This testimony was objected to, because it involved the opinion of the witness as to the age of the prosecutrix at the time. This character of testimony has been held by our own court, as well as by the courts of other States, admissible. See, Walker v. State, 25 Tex. Crim. App., 448; Koblenschlag v. State, 23 Tex. Crim. App., 264; Marshall v. State, 49 Ala., 21; Benson v. McFadden, 50 Ind., 431; Lawson, Exp. Ev., 473. The appellant offered to prove by the witness, Dr. J. D. Meadows, that he was "well acquainted with Minnie Cannon, the prosecutrix, and that he knew her on or about the date she claims defendant had carnal knowledge of her; that he knew her physical appearance with reference to size and development, and, judging therefrom, would say that, at the time last aforesaid, said Minnie Cannon was a young woman of about the age of seventeen or eighteen years." The State objected to the introduction of this testimony, on the ground that it was irrelevant and immaterial, and that it called for a conclusion of the witness, and that it was incompetent. The court sustained the objection, and thereupon the defendant, in open court, saved his exception, and stated that the purpose for which he desired said testimony was "(1) to prove the age of Minnie Cannon; (2) to prove that the defendant did and could have reasonably mistook her age, if, in fact, she was under fifteen years of age at the time of intercourse, if there was any." It will be seen by recurring to the appellant's second bill of exceptions that the court admitted over his objection, this very character of testimony coming from the witness, Hanna, as to the age of the prosecutrix when she was an infant; and we have held that appellant's objection to that testimony was not well taken; and that said testimony was competent. If it was competent for the State to thus prove, by the opinion of a witness who saw and knew the prosecutrix when she was an infant, that she appeared then to be of a certain age, it certainly was compe

tent, when the defendant, by this same character of testimony, desired to prove by a witness who knew the prosecutrix well, was acquainted with her at the time of the outrage, and who would testify that, from her appearance at that time she was 17 or 18 years of age, to have permitted him to do so. If this character of testimony was admissible for the State to prove the age of the prosecutrix in order to obtain a conviction, it was equally competent for the appellant to resort to the same character of testimony in order to prove the age of the prosecutrix as a defense to the prosecution. According to a familiar maxim, "It's a poor rule that will not work both ways." We refer to the same authorities heretofore cited, supra. The appellant offered to prove by the witness, E. T. Kinman, that on two occasions, about the 1st of September, 1895, he saw the prosecutrix in the act of carnal intercourse with one Jim Kinman. · Appellant offered this testimony upon the following grounds, to-wit: "(1) To impeach said Minnie, when she testified that no person, other than the defendant, had had carnal knowledge of her; (2) to refute the facts and circumstances in evidence tending to establish pregnancy of said Minnie Cannon on account of her alleged intercourse with said defendant; (3) in mitigation of punishment; (4) generally for any and all purposes." The State objected ·to this testimony, and it was excluded. The court allowed ·the bill of exceptions, with the explanation "that Minnie Cannon's testimony that she had carnal intercourse with no other person than the defendant was brought out by the defendant's counsel on cross-examination." If this testimony could be regarded as upon a collateral issue, and upon an immaterial question, the court's explanation of his reason for rejecting the same would be sufficient. But by the record in this case it will be seen that it was an issue as to whether or not defendant had ever had carnal intercourse with the prosecutrix, and some of the State's testimony tending to show that fact consisted in certain testimony regarding her pregnancy. Now, if she testified to having had intercourse with the defendant only once; and never having had intercourse with any other person, and she was afterwards found to be pregnant, then the fact would be a very material circumstance to corroborate her testimony, and it would become very material if the defendant could show that she had had intercourse with other persons, so that, if she was pregnant, it was on account of such other intercourse, and not on account of the intercourse with the defendant. We believe the testimony should have been admitted on the second ground assigned by the appellant, to-wit: "to refute the facts and circumstances in evidence tending to establish pregnancy of the said Minnie Cannon on account of her alleged intercourse with said defendant." Appellant also objected to a number of remarks of the District Attorney in discussing the case. Some of this discussion was reprehensible. We particularly call attention to the following, used by the District Attorney in his closing argument, to-wit: "I thought I would give them (defendant's counsel) a little physical facts myself. I went out, and told Minnie to go and get that dress she

wore to Sherman, and the one she wore to the trial; and I had her to come before you with that long dress that the little boy testified about, and you saw it for yourselves.   I wanted to show you that the little boy was mistaken as to what she said."   The defendant's counsel objected to these remarks, especially as to what counsel told her to do, on the ground "that they were dehors to the record, and illegitimate argument."   The court overruled the objection, and the defendant excepted.   This was the statement by the prosecuting attorney of facts material to the case, explanatory and supplementary to testimony that was admitted, and should not have been permitted.   We would not be understood as holding that we would reverse the case on this account, especially as no charge was asked on the subject, but we would be understood as insisting that no good can come from the prosecution wandering outside of the record of facts sworn to by the witnesses, and it should not have been allowed by the court.   In view of another trial of this case, we call attention to the fact that the indictment is fatally defective in failing to negative the fact that the prosecutrix is the wife of the accused.   This must be done.   See, Rice v. State, ante p. 36.   There was no exception taken to the indictment on this ground, and we call attention to it in view of another trial.   For the errors heretofore discussed, the judgment is reversed, and the cause remanded.            -

*Reversed and Remanded.*