## TAGGART v. BOSCH.

### L. A. No. 189; May 29, 1897.

#### 48 Pac. 1092.

**New Trial.**—An Order Denying a New Trial for Insufficiency of the evidence will not be disturbed where there is a material conflict in the evidence.

**Witnesses—Cross-examination.**—On an Issue as to the Genuineness of the note in suit, plaintiff testified that it was made by defendant for part of the price on sale to him of an interest in a mine by plaintiff and his partner. Plaintiff's testimony in chief was confined to the execution, delivery and nonpayment of the note. On cross-examination he testified that he did not tell his partner on the day of the sale of having taken the note, though they executed the deed together, but told him some time later; whether a week later or two or three months he could not say. Held, that further cross-exam-

ination as to how soon after the sale he saw his partner was erroneously excluded.

**Witnesses—Cross-examination.—In Such Case, There was No Direct Testimony** as to the genuineness of the note, except plaintiff's affirmance and defendant's denial thereof. Plaintiff's partner was ordinarily engaged at the mine, and plaintiff might not have seen him for some months after the sale. The partner testified that he heard of the note the next time after he saw plaintiff, but could not say when that was. Three and a half months after the sale of the mine, plaintiff bought defendant's interest in a liquor business in which they were partners, and, to make the cash payment, borrowed a large sum at the bank, exhibiting the note in suit, which was for $3,000, as one of the securities offered. In addition to the cash payment, plaintiff gave his own notes to defendant for $1,500, nothing being said about the note in suit. Plaintiff's explanation was that he did not want to do anything to interfere with the trade, and that one-half the note in suit belonged to his partner in the mining business. His explanation of not having told his partner of the note was that their relations were confidential, each doing about as he pleased. The consideration named in the deed of the mine to defendant was $500, and plaintiff testified that the actual consideration was $250 and the note. Plaintiff's partner testified that he understood the consideration to be $250 or $350. Two witnesses testified that defendant told them that it was $250. The expert testimony was equally divided as to the genuineness of the note in suit. Held, that the erroneous exclusion of the cross-examination of plaintiff as to when he next saw his partner after the sale of the mine was prejudicial.[1]

**Witnesses.—It was Error to Exclude Cross-examination** of plaintiff as to whether he had private accounts between himself and defendant, and whether he told the bookkeeper in a liquor business in which they were partners about the note.

**Instructions.—Alleged Error in Instructions Given and in Refusing** other instructions cannot be considered in the absence of exceptions to the giving and refusal.

APPEAL from Superior Court, Los Angeles County; Clark, Judge.

Action by Joe P. Taggart against John D. Bosch. Judgment for plaintiff, and from an order denying a new trial defendant appeals. Reversed.

---

[1] Cited and followed in Harrold v. Territory of Oklahoma, 169 Fed. 52, 94 C. C. A. 415, the court saying in the same connection that it is only after the right of cross-examination has been substantially and fairly exercised that the court has discretion to cut off further questioning of the adverse witness.

John S. Chapman and Del Valle & Munday for appellant; Diehl & Chambers, R. H. F. Variel and Goodrich & Garrison for respondent.

HAYNES, C.—This action is upon a promissory note alleged to have been made and delivered by the defendant to the plaintiff on August 8, 1890, for the sum of $3,000, payable one year after date, with interest at seven per cent. The answer denies that defendant made, signed or delivered said note. The pleadings are verified. A jury trial was had, and resulted in a verdict for the plaintiff, upon which judgment was entered. This appeal is from an order denying defendant's motion for a new trial.

The specifications upon which the motion for new trial was heard are: (1) Insufficiency of the evidence to justify the verdict; (2) errors in ruling upon questions of evidence; and (3) that the court erred in giving certain instructions to the jury, and in refusing to give other instructions requested by defendant.

1. The sole question at issue upon the pleadings was whether the defendant made the note sued upon, and upon that question the evidence was conflicting. The plaintiff testified that he saw the defendant sign the note, and that, immediately after it was signed, the defendant delivered it to him; that it was made and delivered in the private office of Taggart & Bosch, no one else being present; that it was made and delivered August 8, 1890, the day of its date; that it was given in part consideration for the sale of an undivided one-sixth interest in an antimony mine to the defendant, the whole consideration of which was $3,250, viz., the note in suit for $3,000, and $250 in money, paid a few days after the sale; and that one J. K. Patton was equally interested with him in the mine, and in the sale of said interest. The defendant testified as positively that he did not give the plaintiff said note; that he did not sign it; that the signature thereto is not his; that he first heard of said note sometime in the fall of 1891, after this suit was commenced, while he was in Leipsic, in Germany, and first saw it after his return from Europe, sometime in June, 1892. If we ended our recital of the evidence at this point, it would certainly appear that there was a material conflict. Experts were called by the plaintiff, who testified, from a comparison

of the signature to the note with other signatures of the defendant which were admitted to be genuine, that, in their opinion, the signature to the note was the genuine signature of the defendant, and about an equal number were called for defendant, who testified that, in their opinion, the note was not signed by the defendant. It is evidently not necessary to review and discuss the testimony given by these witnesses, nor to rehearse the able arguments of counsel for appellant as to the weight which should be given to such evidence, for, whichever way we might conclude the preponderance to be, the conflict remains, not only as to such evidence, but to the direct evidence given by the parties as well. Other testimony was given by the parties and by other witnesses, which should be stated in connection with the second point made by appellant; but it may be said in advance that it does not remove the conflict so as to permit us, under the well-settled rules of decision long and uniformly adhered to in this state, to reverse the order denying defendant's motion for a new trial, upon that ground, whatever may be our opinion as to the preponderance of the evidence.

2. Appellant contends that the court erred in certain rulings during the trial. Plaintiff and defendant were co-partners in the wine and liquor business from August, 1887, to November 25, 1890. On August 8th, defendant purchased said interest in said mine, and on that day the plaintiff and his co-owner of the mine, J. K. Patton, executed and acknowledged a deed to the defendant for said interest, both the grantors acknowledging its execution at the same time before the same notary in Los Angeles (where plaintiff and defendant had their place of business) on the same day said promissory note is claimed by the plaintiff to have been made by the defendant. Said mine is situated, as appears from the deed, in San Bernardino county; and Patton, who had been for some years associated with the plaintiff in mining enterprises, was the mining man, and attended to that part of the business, and was much of the time, perhaps usually, out of town. The execution and acknowledgment of the deed, however, showed that he was in town the day the note was made, if made at all, and the plaintiff testified that he and Patton went together to the notary, and acknowledged it, and that he did not then inform Patton that he had sold said interest for $3,250, or that he received or

was to receive a note for $3,000. The consideration named in the deed was $500. The testimony of the plaintiff, in chief, was confined to the execution and delivery of the note, and that it had not been paid. Upon cross-examination he testified that the note was given in part consideration for an interest in the "Blue Jay Mine." He was then asked: "Where is that Blue Jay mine situated?" An objection that the question was incompetent, irrelevant and immaterial, and not proper cross-examination, was sustained, and an exception taken. The witness then testified that the consideration of the sale was the note in suit and $250 in cash, and that the sale was of an interest in a mine which he and Patton owned, and the sale was made by him and Patton, and that he did not know where Patton was at the time the note was delivered. Plaintiff was then asked by counsel for defendant: "How soon after this sale did you see him?" The same objection was made and sustained. Counsel for defendant then stated: "I want to show that Mr. Patton was in ignorance of the existence of this document; that he was a co-owner with Mr. Taggart of this mine; and that he knew nothing about the existence of the note for some months after that. We take an exception." Counsel then asked the witness: "When did you next see Mr. Patton?" The same objection and the same ruling were made, and an exception noted. "Q. Did you ever tell Mr. Patton about getting this note? A. Yes, sir. Q. When? A. Some time following. Q. How soon after? A. It may have been a week, or it may have been two or three months, I couldn't state now (it is four years ago) just exactly when I did tell him. I told him though. Q. Didn't you state to the court, upon the trial of this cause before, that it was in November? A. I may have said so; yes, sir." In reply to further questions, the witness said he did not tell Patton that he had received or was about to receive a note for $3,000 besides the $250 "that day" (the day the deed was executed), nor while the "transaction was going on," and that the bookkeeper of Taggart & Bosch was R. M. Sharp. "Q. Did you tell him about this note?" Same objection and same ruling. "Q. You had private accounts between yourself and Bosch?" Same objection and same ruling and exceptions were taken.

These rulings may be considered together, as they all involve the same question of law, viz.: Were they proper questions to be put upon the cross-examination of the plaintiff? The issue of fact being tried was whether the defendant made the note which was the basis of the action. The plaintiff alleged in his complaint, and had testified in chief, that the defendant signed and delivered it. The answer denied specifically that he signed or delivered it. It did not allege new matter by way of defense, but challenged the plaintiff to prove the averments of his complaint. If he failed to prove that defendant signed and delivered the note, judgment would necessarily be for the defendant, without any evidence being offered on his part; and the only question before the jury was the truth or falsehood of plaintiff's allegation. It was held in Jackson v. Water Co., 14 Cal. 18, that a cross-examination cannot go beyond the subject matter of the evidence in chief, but should be allowed a very free range within it; that, where the defendant on cross-examination simply aims to disprove by the witness the very cause the witness himself has made, the rule excluding such evidence until defendant opens his case has no application: See, also, Harper v. Lamping, 33 Cal. 647, 648; People v. Lee Ah Chuck, 66 Cal. 667, 6 Pac. 859; Wixom v. Goodcell, 90 Cal. 623, 27 Pac. 419; McFadden v. Railway Co., 87 Cal. 464, 11 L. R. A. 252, 25 Pac. 681. A witness may be asked any question upon cross-examination which tends to test his accuracy, veracity or credibility, and the court should be especially liberal where the witness is a party to the suit: Neal v. Neal, 58 Cal. 287; Greenleaf on Evidence, sec. 446. That the court erred in the above rulings is apparent; and it is equally well settled "that every error is prima facie an injury to the party against whom it is made, and it rests with the other party clearly to show, not that probably no hurt was done, but that none could have been or was done, by the error": Jackson v. Water Co., 14 Cal. 25; Carpentier v. Williamson, 25 Cal. 167; People v. Ybarra, 17 Cal. 167, 172; Rice v. Heath, 39 Cal. 609; Cleary v. Railroad Co., 76 Cal. 240, 18 Pac. 269.

The further question is therefore presented, viz.: Does it appear from the record that the defendant was not injured by the restrictions imposed upon the defendant in his cross-examination of the plaintiff? The case is peculiar, at least

so far as the consideration of the evidence is concerned. But two persons, the plaintiff and defendant, know of their own personal knowledge whether the note in suit is genuine or is a forgery. It is one or the other. The plaintiff swears that it is genuine, that it was signed by the defendant in his presence, and was immediately delivered to him. The defendant as positively swears that it was not signed or delivered by him. No witnesses were called to testify to the reputation of either of the parties for honesty or veracity, yet the veracity of the two men who alone knew the truth must be determined by the jury before a verdict could be rendered. The burden of proof was upon the plaintiff, and, to enable him to recover, the evidence must preponderate in his favor. Under such circumstances, the conduct or declarations of the plaintiff, as to all matters or circumstances which tended to weaken or destroy his direct testimony that the defendant did execute and deliver the note, were competent and proper subjects upon which to cross-examine him, and a full and unrestricted cross-examination within the limits hereinbefore stated was, under the circumstances, of the utmost importance to the defendant.

It is contended, however, by the learned counsel for respondent that the facts called for by the questions which were disallowed were subsequently disclosed in evidence, or were unimportant and immaterial and harmless, and that, therefore, the defendant was not prejudiced. The location of the Blue Jay mine was shown by the deed, but the questions, "How soon after this sale did you see him?" and, "When did you next see Mr. Patton?" were not answered, nor the facts called for disclosed. The plaintiff testified that Patton went with him to acknowledge the deed, but "couldn't say whether this was before or after the giving of the note. It was about the same day." He further testified that he did not tell Patton about the note that day, but did tell him some time after; that it might have been a week or two or three months; and that he may have testified before that it was in November. It also appeared that Patton was in charge of the mines out on the desert, and it might be that plaintiff did not see him until November, and that he told him the first time he saw him. But it might be the case that he saw him the next day or the next week after the date of the note, or every day or every week from that time

until November. The jury may have inferred from the ruling of the court upon these questions that whether the plaintiff had frequent and early opportunities of informing his co-owner in the mine of the existence of the note did not affect the probability of its existence, and that, therefore, the fact that he did not tell him sooner, or the fact that he did not tell him at all, if that were so, would not affect plaintiff's credibility. The plaintiff, however, realized that some explanation of his conduct in this particular was necessary, and, upon his redirect examination, gave, as a reason for not telling Patton of the note, that their relations "were very confidential"; that Patton did as he pleased over on the desert, and he did the same at his end of the line, and that was why he didn't tell him; that "I never made any explanations to him or he to me." The witness could not have meant that he "never" explained his transactions in relation to their common property to his co-owner, else he would never know what plaintiff did; but in all this explanation of their "very confidential" relations he gave no intimation as to how soon he saw Patton after he received the note, nor when he next saw him. It certainly cannot be contended that the silence of plaintiff in regard to this note would not be more significant if he saw Patton immediately after the time he swears he received it, or saw him within a few days, or frequently between that and the time he did tell him.

But other facts disclosed in the testimony show still more clearly the materiality and importance of these questions. The plaintiff and defendant were partners in the liquor business at the time of this transaction, and had been for three years preceding. On November 25, 1890, about three and one-half months after defendant bought said interest in the mine, defendant sold his interest in the firm of Taggart & Bosch to the plaintiff for $6,500, of which the plaintiff paid $5,000 in cash, and gave defendant his two several promissory notes—one for $1,000, payable January 1, 1892, and the other for $500, due July 1, 1892. The cash payment was made by plaintiff's check on the First National Bank of Los Angeles. In order to make the cash payment, plaintiff borrowed $4,000 from said bank, and, when negotiating the loan, exhibited the note here in suit to the cashier as one of the securities he had on hand, and, so far as appears, said cashier, Mr. Shaffer, is the first person, aside from

the parties to the note, who ever saw it. In buying out the interest of Mr. Bosch in the store, the plaintiff did not mention to him the existence of this note, though he showed it to Mr. Shaffer as part of his "securities," nor ask the defendant to accept it as part of the cash payment, nor even to accept a credit upon it to the extent of $1,500, for which sum he gave his own notes. Plaintiff gave as reasons for not mentioning this note to the defendant at the time he purchased his interest in the store that the relations of the parties had become strained; that their negotiations had culminated in a "give or take" proposition, made ·about 5 o'clock in the evening, and limited to 12 o'clock the next day; that it was important that the business should not be interrupted, and he did not want to call up anything that might interfere with his trading on the partnership business at that time, and, "besides, Patton equitably owned one-half of said note." Plaintiff had inserted in the deed the consideration of $500, which would make the value of the mine $3,000. He had testified that the real consideration was $3,250, which would make the value of the mine $19,500. He had taken the note in his own name, and had presented it to the bank as one of his securities, and as constituting, in part at least, the basis of his credit. He had borrowed $4,000 from the bank, to enable him to make a cash payment of $5,000 to the man whose note he held for $3,000, and, in addition, gave his own notes for $1,500, without mentioning defendant's note, because, as he testified, "I did not want to call up anything that might interfere with my trading on the partnership business at that time. Besides, James K. Patton equitably owned one-half of said note." The record gives no hint that at that or any other time there had been any dissatisfaction on the part of the defendant with his purchase of said interest in the mine. The defendant could not have forgotten that less than four months before he had given the plaintiff his note for $3,000, and no reason appears why a reference to this note should interfere with the purchase of defendant's interest in the store if the note was in fact made by the defendant. On the contrary, it is not reasonable to suppose that defendant would want to accept plaintiff's notes for $1,500, while the plaintiff held his note for $3,000, which might be transferred before maturity, and which he could be compelled to pay to the holder, though the con-

tingencies of business might make the notes he held against the plaintiff wholly uncollectible. Nor does Patton's interest in the note present a satisfactory explanation of the problem. It had not prevented him from using it as his own in obtaining a loan from the bank, and, besides, his "confidential" relations with Patton were such that no "explanations" were ever required or made by either of them, and hence he was at liberty "to do as he pleased at his end of the line." But, if it were otherwise, there could be no reason why he should not, instead of making his own notes for $1,500, have surrendered defendant's note, and taken a new note from him, payable to Patton for $1,500; and thus have utilized his own interest in the note, and at the same time satisfied his conscience as to Patton's interest. If the circumstances surrounding and following the sale of said interest in the mine for the price and upon the terms claimed by the plaintiff, and his subsequent conduct, had been consistent with such claim, thus relieving him from involved and improbable explanations, these questions, which were excluded, as to how soon after the sale he saw Patton, and as to when he next saw him, would seem to be of trifling importance; and if from the whole of the evidence it would be clear that, however they might have been answered, the result of the case would not have been affected, the presumption of injury from the erroneous ruling would have been overcome; but when, as here, the answers to these questions might have increased the improbabilities of the transaction as testified to by the plaintiff, and compelled additional explanations, the difficulty of making which is usually increased with each recurring necessity, we cannot regard the error as harmless.

We need not enlarge upon the rulings made upon the questions put to the plaintiff as to whether he told the bookkeeper about the note, and whether private accounts were kept between plaintiff and defendant. They were neither so remote nor related to matters so improbable as to justify their exclusion. The general effect of these rulings was to improperly restrict the cross-examination of the plaintiff. We are not authorized to infer that, if these questions had been permitted, the cross-examinations upon those lines would have stopped with the answers to them, but that it would have been pursued so long as the answers would indi-

cate that it was proper or profitable. "The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests which the law has devised for the discovery of truth. . . . . It is not easy for a witness who is subjected to this test to impose on a court or jury; for, however artful the fabrication of falsehood may be, it cannot embrace all the circumstances to which a cross-examination may be extended": Greenleaf on Evidence, sec. 446. And where it is evident, as it is in this case, that there is absolute and unqualified falsehood upon the one side or the other, no restriction upon a proper cross-examination of either of the parties who alone have personal knowledge of the fact in issue can be said to be harmless, unless shown to be so by other evidence, and that does not appear.

We have not space to discuss the remaining evidence in detail, but a brief reference to some of it must suffice. The deposition of Patton was taken and read by the defendant. He testified that he did not recollect what the price was. He was then asked: "Didn't you tell me the other day what he paid? A. Well, I told you, I think, it was $250, and Bosch told me $350, and I told him I forgot all about what it was. Q. When Bosch told you $350, he meant a hundred dollars that was sent for assessment work? A. It was all put back in the mine. It was all put in the mine, including the assessment money. Q. You are quite positive it was not over $350? A. As my understanding was, I don't, no." As to what the witness meant by his last answer we will not speculate. He further testified that he first heard of the note "the next time after I saw Mr. Taggart." He could not say how many months after, nor whether Mr. Bosch had gone to Europe, nor whether it was after Bosch had sold out to Taggart, nor whether it was five months or five days. Mrs. Bosch and T. R. Bennington testified in substance that plaintiff told each separately that he sold said interest in the mine to Bosch for .$250, and Charles Kohler testified that plaintiff told him he had sold Bosch said interest for $250, and offered to sell him another one-sixth for $350. Plaintiff denied having told either of said witnesses that he sold said interest to Bosch for $250, and that he had no recollection of offering Kohler any interest in the mine for $350, or for any sum. Some circumstances were also shown upon

the cross-examination of said witnesses tending to weaken their testimony; and as to defendant it appeared that in a deposition given by him he testified that the check for $250 which he gave plaintiff was given on August 8th, and post-dated the 13th, and had so testified on a former trial, but, after seeing the stub, admitted that he had been mistaken, and that the check was not made until the 13th. It is not necessary to discuss the question as to what weight should be given to the expert testimony in this case,, or the general question as to its weight, or the numerous authorities cited by appellant upon that subject, since both parties resorted to it, and with about equal success.

3. No exceptions appear to have been taken to the instructions given, nor to the refusal. of the court to give those requested by the defendant, and they cannot therefore be considered. We advise that the order appealed from be reversed and a new trial granted.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order appealed from is reversed and a new trial granted.