[Criminal No. 531.  Filed March 24, 1922.]

[205 Pac. 324.]

## ROBERT FULLER, Appellant, v. STATE, Respondent.

1. WITNESSES—ANYTHING AFFECTING CREDIBILITY MAY BE SHOWN.—A party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credibility, and to inquire upon cross-examination what influence was used upon the witness for the state.

2. WITNESSES — EVIDENCE AS TO REASONS OF PROSECUTRIX FOR MAKING COMPLAINT HELD IMPROPERLY EXCLUDED.—In a prosecution for statutory rape, it was error to exclude answers to questions by the defendant's attorney propounded to prosecutrix as to whether her aunt in another state urged her to come to this state to make complaint, and as to how she came to go to the county attorney, whether any influence was brought to bear to have defendant arrested, and as to whether her aunt told her to go to the county attorney.

3. CRIMINAL LAW—EXCLUSION OF EVIDENCE AS TO REASONS FOR MAKING COMPLAINT HELD PREJUDICIAL ERROR.—In a prosecution for

rape upon a thirteen year old negro girl, it was prejudicial error to exclude answers to questions propounded to prosecutrix by defendant's attorney as to whether her aunt in California urged her to make a complaint, as to how she came to go to the prosecuting attorney, whether influence was brought to bear to have defendant arrested, and whether her aunt told her to go to the county attorney.

4. RAPE—WITNESSES—SPECIFIC ACTS OF MISCONDUCT OF PROSECUTRIX WITH OTHERS HELD INADMISSIBLE IN STATUTORY RAPE TO SHOW CONSENT OR CREDIBILITY.—In a prosecution for rape upon a prosecutrix under the age of consent, evidence of specific acts of similar unchaste conduct with men other than accused is inadmissible either to show consent or as bearing upon the credibility of her testimony.

5. RAPE—EVIDENCE AS TO PATERNITY OF CHILD ERRONEOUSLY EXCLUDED IN PROSECUTION FOR STATUTORY RAPE.—In prosecution for rape on a negro girl under the age of consent, it was error to exclude evidence tending to show that the child alleged to have resulted from defendant's intercourse with prosecutrix was, in fact, begotten by another man.

APPEAL from a judgment of the Superior Court of the County of Yavapai. Richard Lamson, Judge. Judgment reversed, with instructions to grant new trial.

Messrs. O'Sullivan & Morgan, for Appellant.

Mr. John L. Sullivan, County Attorney, Mr. W. J. Galbraith, Attorney General, and Mr. George R. Hill and Mr. F. W. Perkins, Assistant Attorneys General, for the State.

FLANIGAN, J.—This is an appeal from a judgment convicting appellant of the crime of rape upon the person of Nedze Chatman, a negro girl aged thirteen years. According to the testimony of the appellant, who is a negro, he was a soldier in the United

4. Right of accused to show unchastity of prosecutrix in statutory rape, note, 48 L. R. A. (N. S.) 269.

Evidence of specific instances of unchastity of alleged victim of sexual offense, notes, 14 L. R. A. (N. S.) 714; L. R. A. 1916B, 965.

States Army during the World War and served overseas. Upon his return to this country he was sent to the government hospital at Fort Whipple, near Prescott, Arizona, for medical attention and treatment. He stayed there from July 3, 1919, until December 31, 1919, when he was discharged. In February, 1920, he was readmitted to the hospital, continuing to stay there as a patient until April 30, 1920, at which time he says he moved to the house of Mary Anderson, the mother of said Nedze Chatman, in Prescott. According to the testimony of the girl, it would appear that appellant came to room at her mother's home as early as February, 1920, and the evidence on that point, if not conflicting, is at least equivocal. The prosecutrix further testified that beginning in February, and at various times up to and including June 29, 1920, the appellant caused her to submit to acts of sexual intercourse with him, the last occasion being on the night of June 29, 1920, during her mother's absence from the house. She made no complaint at that time of this mistreatment, stating that defendant had told her not to say anything about it to her mother. The prosecutrix was sent by her mother, Mrs. Anderson, to her aunt, Mrs. Thomas, in California, on October 2, 1920, and a child was born to her there on April 7, 1921—nine months and nine days after June 29, 1920, the date of the last intercourse. She testified further that during her stay in California she wrote to her mother about Fuller's conduct, and also told her aunt about it, after the latter had had her examined. The exact times these disclosures were made are not shown.

The prosecutrix returned to Prescott on June 25, 1921, with a child. According to the testimony of the mother, who testified as a witness for the appellant, on the day of the girl's return the girl stated to the mother that one Lennox or Leonard was the father of

the child. She did not mention Fuller's name in any way in connection with his having mistreated her, and never mentioned his name in that conversation at all.

The strongest corroboration by a witness of the likelihood of acts of sexual intercourse between the appellant and the prosecutrix is contained in the testimony of Lucille Denson, who lived in a building adjoining the house occupied by Mrs. Anderson and the prosecutrix, who stated that "some time during the summer" of 1920 she overheard the prosecutrix talking, as she supposed, with Fuller, asking him to let her alone, saying, "Mr. Fuller, you go away from here and let me alone," and asking him to behave himself and get out of there and let her alone, repeating such expressions a number of times. She did not hear Fuller's voice, nor could she swear that he was present in the room; she did not see him go in or come out of the room. Eight or ten minutes afterwards she went to her front door and looked out, and Fuller was sitting on the front porch of the Anderson home.

At the trial, and while giving her testimony, the prosecutrix had the child with her, and several times referred to it as the result of her intercourse with Fuller.

In the cross-examination of the prosecutrix, the following questions were asked, to each of which objection was made by the county attorney and the objection sustained by the court:

Did your aunt in California urge you to come here and make complaint?

How did you come to go to the prosecuting attorney?

Was there any influence brought to bear upon you to have Fuller arrested?

Did your aunt over in California tell you to go to the county attorney?

The purpose of these questions was undoubtedly to elicit testimony to disprove the natural inference that the prosecution was initiated by Nedze Chatman solely because of the wrongful acts of the accused, to which she had testified. If the appellant could show that the charge against him was the result of influence exerted upon the prosecutrix by her aunt, or other persons, or that she had been prevailed upon to any extent by others to make the complaint against him, it can readily be seen that such disclosures might prove of aid to him in establishing his defense. He might thus have cast doubt upon the truth of the matters the prosecutrix had alleged, or have disproved them altogether by referring the prosecution to other motives consistent with his innocence and inconsistent with his guilt. The questions asked, and if favorable answers thereto had been obtained, others to follow, developing further facts, must therefore be considered as an effort to shake or destroy the credit to be given the story of the prosecutrix. The party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credibility (*State* v. *Collins,* 33 Kan. 77, 5 Pac. 368; *State* v. *Stukes,* 73 S. C. 386, 53 S. E. 643), and in a criminal prosecution to inquire upon cross-examination what influence was used upon the witnesses for the state (*United States* v. *Dowden,* Fed. Cas. No. 14,990a), and where the charge made is of rape, and the state's case depends almost entirely on the testimony of the prosecutrix, ample latitude and cross-examination should be allowed.

As is said in *People* v. *Baldwin,* 117 Cal. 244, 49 Pac. 186:

"In this class of prosecutions [for rape] the defendant, owing to natural instincts and laudable sentiments on the part of the jury, and the usual circumstances of isolation of the parties involved at the commission of the offense, is, as a rule, so dispro-

portionately at the mercy of the prosecutrix' evidence that he should be given the full measure of every legal right . . . to maintain his innocence."

And see generally the following cases: *Rogers* v. *People,* 34 Mich. 345; *State* v. *Hazlett,* 14 N. D. 490, 105 N. W. 617; *Hardtke* v. *State,* 67 Wis. 552, 30 N. W. 723; *Fussell* v. *State,* 93 Ga. 450, 21 S. E. 97; *Taggart* v. *Bosch,* 5 Cal. Unrep. 690, 48 Pac. 1092; *People* v. *Blackwell,* 27 Cal. 65; *Harper* v. *Lamping,* 33 Cal. 641; *Curby* v. *Territory,* 4 Ariz. 371, 42 Pac. 953.

We think it was error to disallow these questions.

The more debatable question is, Do the rulings constitute such substantial error to the prejudice of appellant as to require a reversal of the judgment? The record does not show what answers would have been made had the questions been allowed. It is quite probable that appellant himself did not know what such testimony would be. This we take to be true because no other effort was made by the defendant to prove any such facts as are suggested by the inquiries. While the evidence was sufficient upon which to base the verdict of conviction, it will be seen from the brief statement of the case we have made that the credibility of the prosecutrix and the appellant was a most important inquiry in the case. The charge was rape, which as has often been said, is a charge easy to make and hard to disprove. The defendant had denied the criminal act. Only he and the prosecutrix could testify as to what had actually occurred. Over a year had elapsed from the date of the last act of intercourse and the filing of the charge. Against the statement of the outrageous conduct of the appellant, as detailed in the evidence of the prosecutrix, appellant's denial might have been of very little worth. An attack upon the credibility of his accuser, to break the force of the incriminating evidence by

showing that it came from a questionable or unreliable source, was his best defense.

It does not appear that appellant's counsel indulged in any unduly protracted examination of the prosecutrix or in any wise sought to abuse the right given him by law to exhibit the facts bearing upon the credibility of the accuser. If we should hold that these errors were not substantial, we would thereby approve a practice which would make the rule itself futile and vain, because in all like cases the rule could then be disregarded with impunity on the assumption that the facts ruled out were immaterial or of no possible value. Such a precedent might result in depriving innocent defendants of the only means at hand of establishing their innocence. It must not be forgotten that the rules of law in criminal cases are made not only to bring about the punishment of the guilty, but also to protect accused persons upon the presumption that they are innocent of crime until their guilt has been established beyond a reasonable doubt. Unless, therefore, it is the law that the appellant was not entitled to have these questions answered, we must hold that the refusal of the court to permit them was substantial error. As we think he was entitled to these answers, our conclusion is that the rulings of the court sustaining the objections require a reversal of the judgment.

Error is assigned to the refusal of the court to permit various witnesses to testify in answer to questions asked to show that the prosecutrix was sexually intimate with others than the appellant. The purpose of such questions—at least, as stated on this appeal—was to show that the child born to the prosecutrix was the result of an act of intercourse by the prosecutrix with some one other than appellant. A careful reading of the testimony discloses that the questions asked in most instances referred to facts too remote

from the issue to be of any value and in other instances that the evidence rejected was later brought out substantially in answer to questions asked by the county attorney.  On the whole, we think that appellant was not injured by the rulings complained of. At the same time, we are impressed with the belief that the court probably labored under a mistaken view of the law as announced by this court in the case of *Sage* v. *State*, 22 Ariz. 151, 195 Pac. 533, wherein we held that in a prosecution for rape, upon a prosecutrix under the age of consent, evidence of specific acts of similar unchaste conduct with men other than the accused is inadmissible, either to show consent or as bearing upon the credibility of her testimony.

The rule thus announced, as shown by the opinion and the authorities cited, is based upon the propositions: First, that the consent of the prosecutrix, she not being of age to give consent, is immaterial. Evidence, therefore, which would be relevant to show the likelihood of nonresistance, were consent an issuable fact, is inadmissible, where such issue is not presented.   Secondly, that so far as the general credit of the prosecutrix is concerned her reputation for truth and veracity cannot be proved by her general reputation for unchastity, much less by specific acts of that kind.   There can be no question about the propriety of the rule where the facts in issue call or require its application.

In the instant case, however, appellant was attempting to show that the child which was produced by the prosecutrix and referred to by her as the result of an act of intercourse had on June 29, 1920, with the accused, was in truth, begotten by another man.   Stated shortly and simply, he had a right to account for the result, i. e., the child, by showing that it was due to another cause, i. e., the sexual intercourse of another. His right to do this was coequal with the right of the

state to support the allegation of rape by showing the outcome of the act. If appellant could show that he was not the father of the child directly charged to be his, it was most material to his defense, and he should be allowed to prove it by all relevant evidence. There is no dissent in the authorities from these propositions. *State* v. *Mobley,* 44 Wash. 549, 87 Pac. 815; *State* v. *Apley,* 25 N. D. 298, 48 L. R. A. (N. S.) 269, and note at page 276, 141 N. W. 740; *People* v. *Flaherty,* 79 Hun, 48, 29 N. Y. Supp. 641; *Bice* v. *State,* 37 Tex. Cr. R. 38, 38 S. W. 803; *State* v. *Height,* 117 Iowa, 650, 94 Am. St. Rep. 323, 59 L. R. A. 437, 91 N. W. 935–940; *People* v. *Currie,* 14 Cal. App. 67, 111 Pac. 108; *State* v. *Bebb,* 125 Iowa, 494, 101 N. W. 189; *Parker* v. *State,* 62 Tex. Cr. R. 64, 136 S. W. 453. See, also, 22 R. C. L., § 45, p. 1211.

Upon a new trial of the case, the court should, the issue of paternity being made, receive evidence offered to show the fact of intercourse by the prosecutrix with men other than appellant, which has a substantial, real, and probative relation to that issue, in accordance with the established rules of evidence as to the relevancy of the testimony sought to be adduced. While the jury may with propriety be instructed as to the purpose for which such testimony is admitted, there is no reason why the testimony should not be received under rulings equally as liberal as those which would govern were the question of paternity the sole fact in issue.

For the reasons given, the judgment is reversed and the cause remanded for a new trial.

ROSS, C. J., and McALISTER, J., concur.