[No. 6933-1-I.   Division One.   April 14, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. OREE
RICO ROBERTS, *Appellant.*

*Robert Olson* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Troy Yancey, Deputy,* for respondent.

CALLOW, C.J.—Defendant Oree "Rico" Roberts appeals a jury conviction of rape in the first degree under RCW 9.79.170(1)[1] and two counts of kidnaping in the second degree under RCW 9A.40.030(1). We remand the cause for a new trial.

At approximately 11 a.m. on April 11, 1978, Ms. A, then age 13, and two other girls went to a park in West Seattle after deciding to skip school for the day. Ms. A's two companions left the park momentarily to meet a girlfriend, while she remained. As she waited for the three girls to return, she was approached by the defendant Roberts. Roberts was in the park with a group of children from a nearby day–care center where he was employed. He introduced himself to Ms. A and, after a brief discussion, asked her if she would like to smoke some marijuana with him. She said she would. Roberts left to return the children to the day–care center and to get the marijuana. While Roberts was gone, the three girlfriends returned to the park

---

[1] RCW 9.79.170 is now recodified as RCW 9A.44.040. Laws of 1979, 1st Ex. Sess., ch. 244, § 17, p. 1993.

where Ms. A told them about meeting Roberts. Two of the three girls agreed to smoke marijuana with Roberts. Roberts returned to the park shortly thereafter and suggested that they go to an apartment nearby, rented to a friend of Roberts, to smoke the marijuana. Ms. A and the two companions agreed, following Roberts to the apartment. Roberts and the three girls smoked three marijuana "cigarettes." Although the exact form of Roberts' inquiries is controverted, the testimony of all involved indicates that Roberts then inquired among the girls whether any of them would have sexual intercourse with him.

It is undisputed that Ms. A did engage in sexual intercourse with the defendant Roberts in the presence of the other two girls in the bedroom of the apartment. Roberts testified in his own behalf that the sexual intercourse he and Ms. A engaged in was by mutual consent. All three girls testified, however, that Ms. A was compelled to engage in sexual intercourse by a knife held in Roberts' hand prior to and throughout entry into the bedroom.

Roberts testified that following the sexual intercourse, the girls left for a grocery store, then returned to the apartment where more marijuana was smoked, and then left for home. The girls testified that after the forced sexual acts were completed, Roberts released them after first warning that they should not report what transpired. When the girls had left, they saw a police car and hailed it. The officers in the police car testified that the girls were hysterical and excited.

Roberts was convicted by jury of first–degree rape and two counts of second–degree kidnaping. He appeals, raising three issues:

1. Was the defendant wrongfully precluded from cross–examining a material prosecution witness for the purpose of showing bias or motive?

2. Was it error to allow impeachment of the defendant through the use of a criminal information charging a felony, when the original information was later amended to charge

a misdemeanor and formed the basis for the misdemeanor conviction offered for impeachment purposes?

3. Should the conviction of first–degree rape be set aside where the jury returned a special finding that the defendant did not use a deadly weapon?

A few days prior to trial, Ms. A was scheduled to appear at an interview at the prosecuting attorney's office but failed to keep the appointment. The interview was rescheduled for the following day. She appeared then and was asked by defense counsel whether she had been physically disciplined by a parent for failing to keep the previous day's appointment at the prosecutor's office. She replied that she had. By pretrial motion, the State sought to preclude any inquiry by defense counsel into any disciplinary action which Ms. A received for her failure to keep the appointment. The defendant opposed the motion on the grounds that such inquiry was relevant to establish that Ms. A, the alleged rape victim, was under external pressure to cooperate with the prosecuting attorney and therefore had a motive to testify falsely. The trial court granted the State's motion, reasoning that such an inquiry by defense counsel was irrelevant since no showing had been made of inconsistent or differing statements by Ms. A.

At the close of Ms. A's testimony at trial, defense counsel renewed his request to cross–examine Ms. A regarding the physical discipline she received. The request was denied. The defendant maintains that the trial court violated his constitutional right of confrontation by refusing to allow the cross–examination of the alleged rape victim for the purpose of establishing bias in her testimony. The State argues that the trial court properly excluded cross–examination of the alleged victim regarding any physical discipline administered by her father because

> [d]efendant's offer of proof referr[ed] to no specific acts, conduct or statements on the part of the witness, but vaguely tend[ed] to show bias in the most indefinite and

speculative way, appear[ing] too remote to meet the purpose for which it was offered . . .

*State v. Jones,* 67 Wn.2d 506, 512, 408 P.2d 247 (1965).

■ The cross–examination of a witness to elicit facts which tend to show bias, prejudice or interest is generally a matter of right, but the scope or extent of such cross–examination is within the discretion of the trial court. *State v. Robbins,* 35 Wn.2d 389, 213 P.2d 310 (1950); *State v. Wills,* 3 Wn. App. 643, 476 P.2d 711 (1970); 5 R. Meisenholder, Wash. Prac. §§ 264, 265, 299 (1965); *see also* ER 607, 611(b). A trial court may, in its discretion, reject cross–examination where the circumstances only remotely tend to show bias or prejudice of the witness, where the evidence is vague, or where the evidence is merely argumentative and speculative. *State v. Jones, supra; State v. Knapp,* 14 Wn. App. 101, 540 P.2d 898 (1975). The denial of a criminal defendant's right to *adequately* cross–examine an essential State witness as to *relevant* matters tending to establish bias or motive will violate the Sixth Amendment's right of confrontation, made applicable to the states by the Fourteenth Amendment. *Davis v. Alaska,* 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974).

■ Where a case stands or falls on the jury's belief or disbelief of essentially one witness, that witness' credibility or motive must be subject to close scrutiny. *State v. Wilder,* 4 Wn. App. 850, 486 P.2d 319 (1971); *State v. Peterson,* 2 Wn. App. 464, 469 P.2d 980 (1970); *State v. Tate,* 2 Wn. App. 241, 469 P.2d 999 (1970). *See also State v. Wilson,* 70 Wn.2d 638, 424 P.2d 650 (1967). Here, the inquiry by the defendant went to the question of whether the witness had been coerced to testify in a particular way. In the prosecution of sex crimes, the right of cross–examination often determines the outcome. In such cases, the credibility of the accuser is of great importance, essential to

prosecution and defense alike.[2] In *State v. Peterson, supra*, in a prosecution for allegedly taking indecent liberties with a female child, the defendant maintained that the trial court unduly limited the scope of his cross-examination of the complaining witness' mother. The court concluded that the failure to allow the defendant to adequately cross-examine the prosecuting witness' mother to elicit testimony attempting to establish that the charges were a fabrication initiated by an older sister of the alleged victim was reversible error. The court stated:

> It is fundamental that a defendant charged with commission of a crime should be given great latitude in the cross-examination of prosecution witnesses to show motive or credibility. . . . This is especially so in the prosecutions of sex crimes where, owing to natural instincts and laudable sentiments on the part of the jury, the usual circumstances of isolation of the parties involved at the commission of the offense and the understandable lack of objective corroborative evidence, the defendant is often disproportionately at the mercy of the complaining witness' testimony.

(Citations omitted.) *State v. Peterson, supra* at 466–67. *Accord, People v. Baldwin*, 117 Cal. 244, 49 P. 186 (1897). In *Fuller v. State*, 23 Ariz. 489, 205 P. 324 (1922), it was held to be error to preclude the cross-examination of the alleged victim as to whether the charge against the defendant was brought as a result of influence exerted upon the alleged victim by relatives.

Here, it is undisputed that the defendant and Ms. A engaged in sexual intercourse. The only controverted issue is whether, as Roberts contends, the act was by mutual consent or, as Ms. A and the two other girls testified, under compulsion by the threat of a knife. Credibility therefore was a key, if not determinative, factor. *State v. Peterson,*

---

[2]RCW 9A.44.020(2) and (3), effective 1975, do prohibit the cross-examination of a sex crime victim as to the victim's past sexual behavior in order to impeach the victim's credibility.

*supra; State v. Tate, supra.* The record discloses that the defendant had an especially significant incentive to impeach Ms. A's testimony. It appears that Ms. A testified at trial, as did the other girls, that three initial statements made by them to the police were untrue. First, the girls told the police that the defendant forced Ms. A from the park to the apartment at knife point. At trial, this was admitted to be untrue. Second, they told the police that Ms. A's two companions left the apartment briefly to go to a grocery store while the defendant forced Ms. A to remain. At trial, it was admitted that all three girls left the apartment to go to a grocery store and then returned. Third, initially the girls did not mention to the police that they had smoked marijuana at the apartment. Ms. A testified that the lies were told because the girls thought that without doing so, they would not be able to prosecute Roberts.

We conclude that the failure to permit the defendant to pursue a theory that Ms. A's testimony was motivated by compulsion to cooperate with the prosecutor constitutes a denial of the defendant's right to effective cross–examination. *Davis v. Alaska, supra; State v. Wilder, supra; State v. Peterson, supra; State v. Tate, supra; Fuller v. State, supra.* It cannot be said that the constitutional error was harmless beyond a reasonable doubt. *Davis v. Alaska, supra* at 317, makes the following observation:

> We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [a witness'] testimony which provided "a crucial link in the proof . . . of petitioner's act."

*See also Alford v. United States,* 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218 (1931).

The defendant testified in his own behalf. In direct examination he admitted to a prior conviction of criminal trespass. On cross–examination, the State elicited, over

objection, that Roberts was originally charged with burglary, though he later pleaded guilty to criminal trespass. Roberts maintains that this was error.

A criminal defendant who testifies in his own behalf may have his credibility impeached by a prior conviction. *State v. Ruzicka,* 89 Wn.2d 217, 570 P.2d 1208 (1977). RCW 10.52.030, enacted in 1909, provides:

> Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, *but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record thereof,* or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, *or by his cross–examination, upon which he shall answer any proper question relevant to that inquiry,* and the party cross–examining shall not be concluded by his answer thereto.

(Italics ours.)

Generally, a defendant may be cross–examined concerning his conviction on any matter which the record of the conviction reveals. *State v. Brewster,* 75 Wn.2d 137, 449 P.2d 685 (1969); *State v. Walker,* 16 Wn. App. 637, 557 P.2d 1330 (1976). *See also* ER 609. The indictment or information upon which a defendant has been found guilty is an indispensable part of the record. *State v. Dickey,* 181 Wash. 249, 42 P.2d 790 (1935). Therefore, reasons the State, the holding of *State v. Ryan,* 192 Wash. 160, 73 P.2d 735 (1937), controls. It was held in *Ryan* that the information in the record of a prior trial, which showed that the defendant had been charged with murder, was properly admitted as evidence in a subsequent trial, even though the accused was convicted only of the lesser included offense of manslaughter.

■ We disagree. It is the finding of guilt that impeaches credibility. A witness should not be discredited except by those misdeeds for which he has been convicted. *State v. Butler,* 9 Wn. App. 347, 513 P.2d 67 (1973), held that where an original information charging the accused with the felony of burglary is replaced by an amended information

charging a misdemeanor of loitering or prowling, the original information may not be utilized to impeach the criminal defendant. It was said that since *State v. Dickey, supra,* suggested that the "record" spoken of in RCW 10.52.030 is the "final record" which the clerk is required by statute to prepare, "an abandoned information which lies in the clerk's files as a useless appendage, and which did not provide the foundation upon which the conviction was based, is not an indispensable part of a clerk's *final* record." *State v. Butler, supra* at 351. Therefore, the original information could not be utilized to impeach the defendant. *See also State v. Stevenson,* 16 Wn. App. 341, 555 P.2d 1004 (1976).

The *Butler* decision is supported inferentially by the rule that charges, arrests and time spent in custody *without* conviction are not admissible to affect credibility. *State v. Lindsey,* 27 Wn.2d 186, 177 P.2d 387, 181 P.2d 830 (1947); *Lundberg v. Baumgartner,* 5 Wn.2d 619, 106 P.2d 566 (1940); *State v. Arnold,* 130 Wash. 370, 227 P. 505 (1924). An information is only an accusation against the defendant which informs the defendant of the charge, and its contents do not prove any element of the offense charged. The original information charging burglary should not have been included as a part of the record of conviction of criminal trespass.

Finally, it is contended that an inconsistency existed between the jury's general verdict of first-degree rape and a deadly weapon special verdict such that the special verdict must control and the general verdict must fall. *See* RCW 4.44.440.

The defendant was charged with first-degree rape. The instruction setting forth the elements of the offense provided that an element of first-degree rape was the using or threatening to use a deadly weapon, to wit: a knife.[3] The

---

[3]Instruction No. 10 stated:

"To convict the defendant of the crime of rape in the first degree, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

term "deadly weapon," as used in instruction No. 10, was defined in instruction No. 8.[4] The court also instructed the jury that if the defendant was found guilty of rape in the first degree, they must by special verdict determine whether the defendant was armed with a deadly weapon. The special verdict is required by RCW 9.95.015 and is used to fix a minimum term of confinement. The term "deadly weapon," as used in the special verdict, was defined in instruction No. 9[5] and resembled the definition of "deadly weapon" given in instruction No. 8—except for the phrase "or serious bodily injury" in the latter and the 3-inch knife blade requirement in the former.

---

"1) On or about April 11, 1978, the defendant engaged in sexual intercourse with [Ms. A];

"2) [Ms. A] was not married to the defendant;

"3) The sexual intercourse was by forcible compulsion;

"4) *The defendant used or threatened to use a deadly weapon, to-wit: a knife;* and

"5) The act or acts occurred in King County.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

"On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty." (Italics ours.)

[4]Instruction No. 8 stated:

"In regard to the term 'deadly weapon,' as used in the instruction on the elements of the crime of Rape in the first degree, the following definition applies:

"Deadly weapon means any explosive, firearm, whether loaded or unloaded, weapon, device, instrument, substance or article which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury."

[5]Instruction No. 9 stated:

"In regard to the term 'deadly weapon,' as used in the special verdict forms for Counts I, III and IV, the following definition applies:

"A deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver or any other firearm, *any knife having a blade longer than three inches,* any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas." (Italics ours.)

The jury found the defendant guilty of first–degree rape but answered the special verdict in the negative, *i.e.*, the defendant was not armed with a "deadly weapon," as defined in instruction No. 9. Based upon these verdicts, the defendant maintains that the special finding is so irreconcilably inconsistent with the general verdict that the inconsistency cannot be overlooked without a strained interpretation of the record and hence the general verdict must fall to the special verdict. *State v. Robinson*, 84 Wn.2d 42, 523 P.2d 1192 (1974); *State v. Kimball*, 14 Wn. App. 951, 546 P.2d 1217 (1976); *State v. Hurley*, 4 Wn. App. 781, 483 P.2d 1274 (1971). We disagree.

■ Where a special finding is susceptible to two constructions, one of which will support the general verdict and the other will not, that construction shall be adopted which will support the general verdict. *Spokane & I.E.R.R. v. Campbell*, 241 U.S. 497, 60 L. Ed. 1125, 36 S. Ct. 683 (1916); *State v. Robinson, supra; State v. Kimball, supra.* The special verdict here is reasonably subject to two interpretations. The first is harmonious with the defendant's contention that the special verdict is inconsistent with that portion of the instruction requiring the jury to be satisfied beyond a reasonable doubt that the defendant was using or threatening to use a deadly weapon. The second construction, offered by the State, points out that the knife that was allegedly used was not introduced into evidence and that all three girls provided the jury with varying descriptions of a knife. Further, the State reasons that the jury could have been satisfied that the defendant used or threatened to use a knife which was "readily capable of causing death *or serious bodily harm*," and hence guilty of first–degree rape, but that the knife blade actually was not longer than 3 inches and hence not a deadly weapon for the purposes of the special verdict. In *State v. Hurley, supra,* the special verdict was inconsistent with the general verdict in every way; both verdicts could not have been true. Here, the two verdicts can be harmonized, and therefore the general verdict is consistent with the special verdict.

The judgment is reversed and the cause remanded for a new trial.

SWANSON and DORE, JJ., concur.