2013 JUL 29 PM 1:03


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )  No. 70347-1-I
 )
   Respondent, )  DIVISION ONE
 )
  v. )
 )
JASON JACOB-MICHAEL MACK, )  UNPUBLISHED
 )
   Appellant. )  FILED: July 29, 2013
 )

COX, J. – Jason Mack was convicted of second degree felony murder, but the jury could not reach a verdict on the alternative charge of second degree intentional murder. On appeal, he claims that the trial court abused its discretion when it denied his request for a lesser included offense instruction for the intentional murder charge. He further asserts that the prosecutor committed misconduct during closing argument that requires reversal. Lastly, he contends the trial court violated his right to confrontation when it excluded evidence related to a trial witness's potential bias. We disagree with all claims and affirm.

In 2009, Brian Garner and his girlfriend, Tiffany Sheppler, went to a bar in Longview, Washington. Sheppler and Garner got into an argument with Mack and Tashenna Woodward, Mack's girlfriend.

Later that night, Garner got into a physical fight with two other men, Lee Pope and Timothy Mitchell. During the fight, Garner was stabbed in the chest. Three witnesses testified that they saw Mack briefly join the fight and make a

stabbing motion at Garner's chest. Soon after, Garner died from the wound. An autopsy revealed that a single edged blade caused a 3.75 to 4 inch wound and cut his pulmonary artery.

Woodward testified that Mack gave her a knife immediately after the fight and told her that "the cops were coming because that guy got hurt or something." Mack then fled the scene and went to his house to say goodbye to his child. He eventually turned himself in Arizona and waived extradition.

The State charged Mack with second degree intentional murder of Garner (count I) and second degree felony murder as an alternative (count II). Both counts included deadly weapon allegations.

The jury was unable to reach a verdict for count I, but it found Mack guilty of count II and the deadly weapon allegation.

Mack appeals.

## LESSER INCLUDED OFFENSE INSTRUCTION

Mack argues that the trial court abused its discretion when it denied his request for a lesser included first degree manslaughter jury instruction for count I (second degree intentional murder). Specifically, he argues that he was entitled to the manslaughter instruction because the evidence suggested only that he intentionally stabbed Garner, but he did not intend to kill him.[1] We disagree.

---

[1] Appellant's Opening Brief at 12-13.

In Washington, the right to a lesser included offense instruction is statutory.[2] A defendant is entitled to an instruction of a lesser included offense if the two prongs of the State v. Workman test are met.[3] Under the legal prong, each element of the lesser offense must be a necessary element of the charged offense.[4] Under the factual prong, the evidence presented in the case must support an inference that only the lesser offense was committed to the exclusion of the charged offense.[5]

The State correctly concedes that all the elements of RCW 9A.32.060(1)(a) (first degree manslaughter) fall within the elements of RCW 9A.32.050(1)(a) (second degree intentional murder).[6] Thus, the legal prong of the Workman test is satisfied. Thus, the issue is whether the factual prong is satisfied.

We view the evidence that purports to support a requested instruction in the light most favorable to the party who requested the instruction at trial.[7]

---

[2] RCW 10.61.006 ("In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information.").

[3] 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

[4] State v. Berlin, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997) (citing Workman, 90 Wn.2d at 447-48).

[5] State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

[6] Brief of Respondent at 12 (citing Berlin, 133 Wn.2d at 550-51 (holding that "first and second degree manslaughter are lesser included offenses of second degree intentional murder and instructions should be given to a jury when the facts support such an instruction")).

[7] Fernandez-Medina, 141 Wn.2d at 455-56.

Where a trial court's refusal to give instructions is based on the facts of the case, we review this factual determination for abuse of discretion.[8] A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons.[9]

Under RCW 9A.32.060(1)(a), first degree manslaughter requires proof that the defendant recklessly caused the death of another. In contrast, under RCW 9A.32.050(1)(a), second degree intentional murder requires proof that the defendant had "intent to cause the death of another person but without premeditation" and that the defendant did "cause[ ] the death of such person or of a third person."

To determine whether the factual prong is satisfied, we must determine whether there was evidence affirmatively establishing Mack's guilt of the lesser offense, first degree manslaughter.[10] "'It is not enough that the jury might simply disbelieve the State's evidence.'"[11] "If the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater, a lesser included offense instruction should be given."[12]

_____

[8] State v. LaPlant, 157 Wn. App. 685, 687, 239 P.3d 366 (2010).

[9] State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

[10] See, e.g., Berlin, 133 Wn.2d at 551; State v. Perez-Cervantes, 141 Wn.2d 468, 481, 6 P.3d 1160 (2000).

[11] Perez-Cervantes, 141 Wn.2d at 481 (quoting State v. Fowler, 114 Wn.2d 59, 67, 785 P.2d 808 (1990)).

[12] Berlin, 133 Wn.2d at 551.

In State v. Perez-Cervantes, the supreme court addressed whether the trial court properly refused to give instructions on the lesser included offenses of first degree and second degree manslaughter.[13] In concluding that the trial court did not err, it considered the argument that Perez-Cervantes only "meant to assault Mr. Thomas, not kill" him.[14] The court rejected this argument because Perez-Cervantes was unable to "overcome the presumption that an actor intends the natural and foreseeable consequences of his conduct."[15] The court explained that the State's evidence showed that Perez-Cervantes attacked Thomas with a knife twice after Thomas had been kicked and beaten.[16] The court stated that a "jury may infer criminal intent from a defendant's conduct where it is plainly indicated as a matter of logical probability."[17] "Whatever Perez-Cervantes' subjective intent, his objective intent to kill was manifested by the evidence admitted at trial."[18]

Here, the evidence shows that Mack intentionally stabbed Garner. Whether the evidence also showed that Mack merely acted recklessly and not intentionally when he did so is the question. Mack fails in his burden to overcome the presumption that he intended the natural and foreseeable

---

[13] 141 Wn.2d 468, 480-82, 6 P.3d 1160 (2000).

[14] Id. at 481.

[15] Id.

[16] Id.

[17] Id.

[18] Id. at 482.

consequences of his action: stabbing Garner in the chest with a blade that caused a 3.75 to 4 inch wound. Instead, he argues that there was no evidence that he made statements about intending to kill Garner or intending to sever Garner's pulmonary artery. But the absence of such statements does not negate the objective showing of intent evidenced by his actions. As in Perez-Cervantes, Mack fails to show that the trial court abused its discretion when it refused to give Mack's requested instruction.

Mack argues that only "slight[ ] evidence" is needed to support the lesser included instruction. But the proper standard is whether there is evidence to affirmatively establish that the defendant is guilty of only the lesser offense.[19] For the reasons we have already explained in this opinion, he fails to meet that standard.

Mack also contends that the jury's inability to reach a verdict for the second degree intentional murder charge "shows the reasonableness of [the] conclusion" that Mack intentionally stabbed Garner but did not intend to kill him. Speculation on why the jury could not reach a verdict on the other charge does not help. The fact remains that Mack failed to meet his burden to convince the trial court that there was affirmative evidence that only the lesser crime was committed.

Finally, Mack argues the trial court's refusal to instruct on first degree manslaughter denied him his Fourteenth Amendment right to due process. But "due process requires that a lesser included offense instruction be given [*only*]

_____

[19] Berlin, 133 Wn.2d at 551.

6

when the evidence warrants such an instruction."[20] For the reasons discussed above, the evidence in this case did not warrant an instruction on first degree manslaughter. There was no denial of due process.

## PROSECUTORIAL MISCONDUCT

Mack argues that the prosecutor made improper statements during closing argument that prejudiced him. Specifically, he argues that the prosecutor made an improper "fill in the blank" argument. He also argues that the prosecutor disparaged the role of defense counsel and impugned counsel's integrity. We hold that Mack fails to establish that these comments require reversal due to prejudice.

A defendant claiming prosecutorial misconduct bears the burden of establishing that the challenged conduct was both improper and prejudicial.[21] "The court reviews a prosecutor's conduct in the full trial context, including the evidence presented, the total argument, the issues in the case, the evidence addressed in argument, and the jury instructions."[22]

"Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced" under one of two different ways.[23] First, if the defendant objected to the allegedly improper

---

[20] Hopper v. Evans, 456 U.S. 605, 611, 102 S. Ct. 2049, 72 L. Ed. 2d 367 (1982).

[21] State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).

[22] State v. Calvin, No. 67627-0, 2013 WL 2325121, *5 (Wash. Ct. App. May 28, 2013).

[23] State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

statements, "the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict."[24] Second, if the defendant failed to object at trial, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[25] The supreme court has stated that "[r]eviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured."[26]

### *"Fill in the Blank" Argument*

Mack first argues that the prosecutor made an improper "fill in the blank" argument during closing argument that prejudiced him. We conclude that this argument was improper, but it was not prejudicial because it could have been cured by a proper instruction.

It is improper for a prosecutor to use a "fill in the blank" argument during closing argument.[27] A "fill in the blank" argument is when a prosecutor states that the "jury must be able to articulate its reasonable doubt by filling in the

---

[24] Id.

[25] Id.

[26] Id. at 762.

[27] Id. at 759-60.

blank."[28] This type of argument is improper because it "subtly shifts the burden to the defense."[29]

In State v. Emery, the supreme court concluded that the State made an improper "fill in the blank argument."[30] During its closing argument, the State, without objection by the defendants, used a PowerPoint slide to state the following:

> [I]n order for you to find the defendant not guilty, you have to ask yourselves or you'd have to say, quote, I doubt the defendant is guilty, and my reason is blank. A doubt for which a reason exists. If you think that you have a doubt, you must fill in that blank.[31]

The court explained this "fill in the blank" argument was improper.[32] Despite this conclusion, however, the court held that the defendants could not show that the statement was "incurable or prejudicial."[33] Because they did not object to the slide at trial, the court considered whether they were prejudiced under the "heightened standard": "[T]he defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the

---

[28] Id. at 760.

[29] Id.

[30] 174 Wn.2d 741, 759, 278 P.3d 653 (2012).

[31] Id. at 750-51.

[32] Id. at 759-60.

[33] Id. at 765.

misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[34]

The court noted that "the prosecutor's remarks could potentially have confused the jury about its role and the burden of proof."[35] But the court explained that these "misstatements . . . could have been cured by a proper instruction."[36]

> If either [of the defendants] had objected at trial, the court could have properly explained the jury's role and reiterated that the State bears the burden of proof and the defendant bears no burden. Such an instruction would have eliminated any possible confusion and cured any potential prejudice stemming from the prosecutor's improper remarks. [The defendants'] claim necessarily fails and our analysis need go no further.[37]

Because they failed to establish prejudice, their prosecutorial misconduct claim failed.[38]

Here, Emery is instructive. During closing argument, the State, without objection by Mack, gave the following description of reasonable doubt:

> A reasonable doubt is a doubt for which a reason can be given. If in your deliberations you have doubts, but you can't put them into words, you can't articulate them, you can't talk with your fellow jurors about them, other than just maybe I have some kind of doubt

---

[34] Id. at 761-62 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

[35] Id. at 763.

[36] Id. at 764.

[37] Id.

[38] Id. at 765.

but I can't really express it, that's not a reasonable doubt. That's not a doubt that the law requires you be convinced beyond.[39]

Like Emery, these statements imply that the jury must be able to put its doubts "into words" or otherwise "articulate" them. Doing so subtly shifts the burden of proof of guilt to the defendant. This is improper.

The question is whether Mack, who did not object to the argument, has failed to show that the "prosecutor's comment[s] engendered an incurable feeling of prejudice in the mind of the jury."[40] Here, as in Emery, had Mack objected, the trial court could have explained that only the State bears the burden of proof. Thus, Mack cannot show prejudice. Because he fails to establish prejudice, this prosecutorial misconduct claim fails.

Mack argues that the improper statement was "flagrant and ill-intentioned, and that violated Mr. Mack's constitutional right to due process."[41] We disagree for the reasons we already explained. His conclusory argument to the contrary is not persuasive.

### Disparaging the Role of Defense Counsel

Mack next argues that the State disparaged the role of defense counsel and impugned counsel's integrity during rebuttal, and these statements prejudiced him. We assume without deciding that some of the statements were improper, but we disagree that Mack was prejudiced.

---

[39] Report of Proceedings (Nov. 2, 2011) at 1053.

[40] Emery, 174 Wn.2d at 762.

[41] Appellant's Reply Brief at 14.

"It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity."[42] But, in general, prosecutors are afforded wide latitude in making arguments to the jury and are allowed to draw reasonable inferences from the evidence.[43] Further, they are entitled to make a fair response to the arguments of defense counsel.[44]

Here, Mack points to multiple places in the prosecutor's rebuttal to support this claim. At the beginning of the prosecutor's rebuttal, he stated that he is happy to have the last word with the jury after defense counsel speaks: "That's what I think is always kind of the entertaining part about this job is you get to see what the defense is, what the stories are, what's thrown out there, and it never fails to entertain, I assure you. I've tried a lot of cases."[45] Defense counsel objected to the prosecutor's reference to "past cases." The court sustained the objection.

The prosecutor continued without objection, "[Defense counsel's] got a job to do. His job, his duty, is to defend Mr. Mack. We will never see them get up and say, 'Oh, boy, they got us.' It doesn't matter what the evidence is. Instead we get a story. And it was a humdinger. It was quite a tale."[46]

---

[42] Thorgerson, 172 Wn.2d at 451.

[43] Id. at 448.

[44] State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994).

[45] Report of Proceedings (Nov. 2, 2011) at 1086.

[46] Id. at 1087.

Later in rebuttal, the prosecutor said that defense counsel has "come up with a story."[47] "And it was a good one. It could have been a John Grisham novel, it could have been a Lifetime movie, but it's not the evidence."[48]

We assume, without deciding, that these statements were improper.[49] Thus, the question is whether Mack has established prejudice.

Mack only objected twice to the multiple comments he now claims were improper. Moreover, Mack did not request either a curative instruction or mistrial based on these statements. Accordingly, we conclude there is no showing of prejudice.

Mack first argues in his reply brief that the improper statements were not harmless beyond a reasonable doubt. Generally, arguments first raised in a reply are not addressed.[50] For this reason, we do not address this argument.

---

[47] Id. at 1088.

[48] Id. at 1088-89.

[49] See, e.g., Thorgerson, 172 Wn.2d at 450 (explaining that a prosecutor impugned defense counsel's integrity when the prosecutor "accused the defense of engaging in 'sl[e]ight of hand' tactics and used disparaging terms like 'bogus' and 'desperation' to describe the defense") (alteration in original); State v. Warren, 165 Wn.2d 17, 29, 195 P.3d 940 (2008) (explaining that a prosecutor disparaged the role of defense counsel when the prosecutor said the defense counsel's argument was a "classic example of taking these facts and completely twisting them to their own benefit, and hoping that you are not smart enough to figure out what in fact they are doing.").

[50] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); see RAP 10.3(c).

For the same reason, we do not address Mack's argument that the alleged misconduct involved "emotionally-laden phrases," which are "per se flagrant and ill intentioned, and cannot be cured by instruction."[51]

## RIGHT TO CONFRONT AND CROSS-EXAMINE ADVERSE WITNESSES

Mack argues that the trial court violated his rights under the Confrontation Clause by limiting the scope of his cross-examination of an adverse witness. Specifically, he contends that the court erred when it excluded any reference to Larry Lamson's plea agreement for a felony charge with one of the assistant prosecutors in this trial. We disagree.

A person accused of a crime has a constitutional right to confront his or her accuser.[52] The primary and most important component is the right to conduct a meaningful cross-examination of adverse witnesses.[53] A defendant's right to confrontation includes the right to engage in otherwise appropriate cross-examination to show that witness is biased.[54] But the right to cross-examine is not absolute.[55]

"A trial court may, in its discretion, reject cross-examination where the circumstances only remotely tend to show bias or prejudice of the witness, where

---

[51] Appellant's Reply Brief at 16.

[52] U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22; State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002).

[53] State v. Foster, 135 Wn.2d 441, 456, 957 P.2d 712 (1998).

[54] Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

[55] Darden, 145 Wn.2d at 620.

the evidence is vague, or where the evidence is merely argumentative and speculative."[56] We review a trial court's ruling on the admissibility of evidence for abuse of discretion.[57]

Here, the trial court determined that there was not a sufficient link between Lamson's plea agreement for another case and his testimony in this case. The court acknowledged that the plea agreement reduced Lamson's potential sentence quite a bit from the standard range. But the court explained that there are "a lot of reasons why somebody could get an exceptional sentence down." The court granted the State's motion in limine because there was not a "clear tie" between the plea agreement and this case.

There was no abuse of discretion by the trial court. On this record, it was entirely proper for the court to decide that there was an insufficient showing of bias to allow cross-examination on this point in this trial.

Mack argues that a sufficient link was established between Lamson's plea agreement and this case. He points out that the assistant prosecutor with whom Lamson negotiated the plea agreement in the other matter was now serving as one of the assistant prosecutors in Mack's trial. He contends that "[u]nder these circumstances, Lamson may have believed that his low sentence would be placed in jeopardy if he failed to testify in accordance with the government's wishes."[58] This is purely speculative.

---

[56] State v. Roberts, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980).

[57] Darden, 145 Wn.2d at 619.

[58] Appellant's Opening Brief at 22.

As Mack acknowledges, the assistant prosecutor who negotiated the plea agreement with Lamson was not involved with Mack's case when Lamson entered his plea. In fact, the assistant prosecutor represented to this trial court that when he reached the plea agreement with Lamson he had "no notion or idea that [Lamson] was a potential witness in" this case. He was not yet assigned to Mack's case.

Because we conclude that the trial court did not abuse its discretion, we need not consider the State's argument that any error was harmless beyond a reasonable doubt.

We affirm the judgment and sentence.

_Cox, J._