# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77438-7-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| KENNETH WAYNE MORSE, | UNPUBLISHED OPINION |
| Appellant. | FILED: June 10, 2019 |

SMITH, J. — Kenneth Morse appeals his conviction for rape of a child in the third degree—domestic violence. He argues that the trial court erred by preventing him from cross-examining the victim about a prior accusation of rape and by overruling an objection to a passing reference to a prior investigation. He also claims that the State committed prosecutorial misconduct during closing argument. We affirm because (1) the trial court properly exercised its discretion, (2) Morse failed to preserve his evidentiary claim, and (3) the State's closing remarks were not improper.

## FACTS

A.T.[1] grew up being raised by her maternal grandmother, M.G., in the Tri-Cities.[2] A.T.'s mother, M.T., was unable to care for A.T. due to struggles with substance abuse, homelessness, and incarcerations, while A.T.'s father,

---

[1] We use initials for the complaining witness, as well as for her mother and grandmother, in order to protect their privacy.
[2] A.T. lived with M.G. from age 2 to 15.

Kenneth Morse, was not involved in the early part of her life. Morse visited A.T. only once between the time she was five and nine years old.

Around the age of nine, A.T. began spending more time with Morse at the Burien home Morse shared with his girlfriend. M.G. arranged for A.T. to spend spring and summer breaks with Morse. A.T. enjoyed visiting Morse. She looked forward to spending time with Morse and felt that her time with him was "kind of like a vacation." A.T. had always returned home happy after each visit with Morse.

During the spring break visit in April 2012, while Morse's girlfriend was away from the house, Morse plied then 14-year-old A.T. with vodka and raped her with a sex toy and with his penis. A.T. immediately told her best friend about what Morse did to her. A.T. returned home to M.G.'s house a few days later and never visited Morse again.

A.T. barely spoke with Morse after she returned home. Approximately six to nine months later, A.T. told M.G. that she "didn't want to have a relationship with her dad anymore" because Morse had inappropriate sexual contact with her during the April 2012 visit. A.T. asked M.G. not to tell anyone.

On Easter 2013, A.T. told M.T. about what happened with Morse because A.T. could no longer take "having that secret inside." Afterward, they contacted the Richland Police Department about Morse's sexual abuse.

In July 2013, then 16-year-old A.T. underwent a videotaped forensic child interview in the Tri-Cities. During this interview, A.T. reported that two teenage boys and an adult male sexually assaulted her when she was 6 years old. She

never told anyone about this assault, and it went unreported. A.T. also disclosed that in the winter of 2011-2012, she was raped by a stranger she had met at a mall. A.T. told the forensic interviewer that she drank some alcohol with this stranger, the stranger then "got really violent" and raped her. Although A.T. told M.T. about this rape a few days later and went to the hospital, they did not report the rape to law enforcement. A.T. also disclosed graphic details about the sexual assault she suffered from Morse and gave the forensic interviewer a list of people to whom she had disclosed this rape.[3]

On July 28, 2015, based on A.T.'s allegations, the State charged Morse with one count of rape of a child in the third degree—domestic violence. Morse pleaded not guilty.

Morse's defense theory at trial was that A.T. was not credible and she fabricated the allegations due to the influence of M.T. In support of this theory, Morse moved to introduce evidence that A.T. was sexually active at the time of the alleged rape and evidence of A.T.'s prior allegations of sexual assault by others.[4] The trial court denied Morse's motion.

During the nine-day trial, the State called a number of witnesses to testify, including several law enforcement officers, M.T., M.G., the child forensic interviewer, A.T., and Morse's girlfriend, Kimberly Waligorska.

---

[3] A.T. reportedly disclosed this sexual assault to several friends and her boyfriend at the time.

[4] The State's case against Morse initially went to trial before a King County jury in October 2016, but the jury could not reach a unanimous verdict and the trial court declared a mistrial. The State's retrial against Morse commenced on May 30, 2017.

M.G. testified that following the April 2012 visit with Morse, A.T. started overeating, hiding food, cutting herself, isolating herself in her room, being unhappy, and getting in trouble at school. M.G. also told the jury that she asked A.T. to leave the house at age 14 because A.T. was "hanging with" the wrong crowd and "doing drugs."

M.T. testified that she did not want A.T. visiting Morse alone, felt the visits were "against [her] wishes," and believed the visits were arranged "behind [her] back." M.T. testified that A.T. became "very withdrawn" and "started messing up at school" and refusing the gifts that Morse sent in the mail after the spring break 2012 visit. M.T. also testified about A.T. being "hysterical, crying, and emotional" upon telling her about what happened with Morse and about taking A.T. to the hospital and to see a detective.

Detective Roy Shepherd, formerly with the Richland Police Department, testified that it is not typical for a 16-year-old to be coached during an interview and that usually "occurs with the smaller children." Detective Shepherd told the jury that he did not notice "any signs of deception" during his interview with A.T.

Mari Murstig, a forensic child interviewer with the Benton County Prosecuting Attorney's Office, testified that she conducted a videorecorded interview of A.T. in July 2013. Murstig explained that her interview with A.T. lasted 45 minutes, including A.T. initially reading a prepared written statement followed by 40 minutes of follow-up questions. Murstig also testified that A.T. was "very cooperative" during the interview and did not show any "signs of possible coaching."

In her testimony, then 19-year-old A.T. first explained to the jury how her memories of the past, while negative, clearly stand out in her mind:

Q. How is your memory about events that happened five years ago?
A. I don't have a good memory about a lot of my life, so—
Q. And why is that, [A.T.]?
A. Um, just a lot of things have happened.
Q. Are there some things, um, that stand out in your memory?
A. Yeah.
Q. What causes things to stand out in your memory?
A. Um, I just remember a lot of the bad things, you know, nothing there was good things here and there, you know what I mean, but mostly just really bad stuff, I just tend not to ever forget.
Q. I want to ask you, is there something bad that happened to you during this spring break 2012 that you remember?
A. Yes.
Q. And how do you feel your memory is about that bad thing?
A. Um, it was pretty on point.

When the State asked A.T. if she was aware of how sex worked before spring break in 2012, A.T. told the jury "[u]m, I mean, yes and no, you know what I mean." Then, in relevant part, A.T. described how she felt while Morse was sexually assaulting her:

Q. Was he saying anything to you at that time?
A. Asking me if I liked it, you know, "How does it feel?"
Q. And did you ever answer?
A. Um, uh uh.
Q. Why not?
A. I didn't know what to say. I didn't like it and I didn't know if he was gonna get mad at me. I didn't know what to say.
Q. And [A.T.], this may be very uncomfortable for you to answer, but how did it feel?
A. It was, um – my body was aroused, but I was very uncomfortable. Very uncomfortable, you know.
Q. And why were you very uncomfortable?
A. I really didn't like how he was touching me. He was my father. It wasn't okay. I didn't really want to be like that with anybody anyway. I wasn't interested. That wasn't where my mind was at 14 years old.

A.T. further testified that as a result of this rape, she became unhappy, very depressed, and started using methamphetamines to cope. A.T. told the jury that despite M.G. asking her to leave the house and becoming "basically homeless" at 16 years old, she would rather be homeless than to live with Morse: "I could be sleeping on a park bench and I still wouldn't go there."

Lastly, when the State asked A.T. about whether she was "making up" the allegations against Morse, A.T. told the jury:

> No, I am not making this up. It's not something, you know—you know, you, as a child, or as, you know—everybody wants mom, everybody wants a dad, you know what I mean. It wasn't my choice not to have a dad, so there is no way that I would ever make this up. It's too painful. It's not something I want to go through.

Morse did not testify at trial. During his cross-examination of A.T., Morse elicited testimony about how old A.T. was when she started dating boys, about her exposure to pornography before spring 2012, about how she was overweight and bullied at school before spring 2012, and clarified how often A.T. drank alcohol with him during the spring break 2012 visit. Additionally, Morse pointed out various inconsistencies in A.T.'s prior description on the amount of alcohol she drank prior to being assaulted by Morse, prior details contained in her initial written statement, and prior descriptions of the sex toy Morse used on her. Morse also pressed A.T. about her knowledge of sex, sexual intercourse, and orgasms, to which A.T. explained:

> Yes, I did know what sexual intercourse was.
>     . . . .
>     . . . I didn't know exactly how everything worked. I didn't know how a woman has an orgasm, but I know when a man puts his area in another female's area, that is what sex is, and that's how you make a baby. I learned that when I was very young.

Morse also called several witnesses to rebut the State's argument that A.T.'s behavioral changes were due to Morse's alleged sexual assault. Both Waligorska and Morse's sister testified about observing scratches, cuts, and burns on A.T.'s arms and legs, before spring break 2012, all of which were indicative of destructive self-harm. Morse's niece testified that she saw A.T. on the Friday or Saturday before Easter 2012 while sleeping over at Morse's house and described A.T.'s demeanor as being "[n]ormal teenager" and did not notice anything unusual about that night. Morse's niece also described A.T. as being "heavyset" and weighed "[e]asily 200 or more" pounds at that time.

On June 13, 2017, the jury convicted Morse as charged. Morse then moved for a new trial, arguing that the trial court should have admitted evidence of A.T.'s prior rape allegation and the prosecutor's closing argument amounted to misconduct. The trial court denied Morse's motion. Morse appeals.

## ANALYSIS

### Exclusion of Prior Rape Allegation

Morse contends the trial court violated his constitutional right to confront witnesses by precluding him from cross-examining A.T. about an unreported allegation that she had been raped by a stranger in winter 2011-2012.

#### Standard of Review

Every criminal defendant has the right to a fair trial and confront the State's witnesses under both the Washington and United States constitutions. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI; State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). The right to confront includes the right to

meaningfully cross-examine adverse witnesses to "test the[ir] perception, memory and credibility." Darden, 145 Wn.2d at 620. When a jury's decision to believe or not believe a single witness is particularly important to the outcome of the case, the witness's credibility "must be subject to close scrutiny." State v. Roberts, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980).

"However, the right to cross-examine adverse witnesses is not absolute." Darden, 145 Wn.2d at 620 (citing Chambers v. Mississippi, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). "Since cross-examination is at the heart of the confrontation clause, it follows that the confrontation right is also not absolute. The confrontation right and associated cross-examination are limited by general considerations of relevance." Darden, 145 Wn.2d at 621.

We review alleged violations of the confrontation clause de novo. State v. Koslowski, 166 Wn.2d 409, 417, 209 P.3d 479 (2009). We review the decision to exclude evidence, as well as the decision to grant a new trial, for abuse of discretion. State v. Posey, 161 Wn.2d 638, 648, 167 P.3d 560 (2007); State v. Williams, 96 Wn.2d 215, 222, 634 P.2d 868 (1981). The trial court's balancing of the danger of prejudice against the probative value of the evidence is subject to abuse of discretion that we will reverse "only if no reasonable person could take the view adopted by the trial court." Posey, 161 Wn.2d at 648. We review a trial court's relevancy determinations for manifest abuse of discretion. State v. Gregory, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006), overruled on other grounds by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014). "A trial judge, not an

- 8 -

appellate court, is in the best position to evaluate the dynamics of a jury trial and therefore the prejudicial effect of a piece of evidence." Posey, 161 Wn.2d at 648.

*Discussion*

Morse argues, given "that the State was asking the jurors to believe A.T.'s testimony" that Morse had raped her, the evidence that A.T. had previously accused others of rape "was relevant to show that such accusations from her are not credible."[5] The rape shield statute, however, precludes and deems inadmissible evidence of the alleged victim's "past sexual behavior . . . on the issue of credibility." RCW 9A.44.020(2). Yet, Morse acknowledges that he intended to use evidence of A.T.'s prior rape allegation to impugn her credibility, which is a purpose that the rape shield statute explicitly forbids.

Even if we ignore the proper application of the rape shield statute to this case and look at only whether A.T.'s prior rape allegations were relevant, as Morse urges us to do, his argument still does not prevail.

It is well-settled that evidence of a prior rape accusation is not relevant unless the defendant can demonstrate that the accusation was false. State v. Demos, 94 Wn.2d 733, 736-37, 619 P.2d 968 (1980); State v. Harris, 97 Wn. App. 865, 872, 989 P.2d 553 (1999) ("[E]vidence that a rape victim has accused others is not relevant and, therefore, not admissible, unless the defendant can demonstrate that the accusation was false."). The admissibility of past sexual

---

[5] At trial, Morse also sought to examine A.T. on her prior sexual history, arguing that such "evidence is necessary to rebut the impression that the graphic nature of [A.T.'s] testimony will lead the jurors to conclude that [she] could only have acquired such information based on the alleged sexual abuse by [Morse]." However, Morse does not raise that argument on appeal.

conduct is within the discretion of the trial court.  State v. Hudlow, 99 Wn.2d 1, 17-18, 659 P.2d 514 (1983).

Morse contends that A.T. prior rape allegation is relevant because it "would have suggested" either that she "falsified the prior incident" or "falsified the prior incident and the one against her father." We disagree.  A.T. being raped by a stranger proves nothing about her credibility.  Nor does the fact that A.T. chose not to report being raped by a stranger to law enforcement mean that her prior allegation is false.[6]  Morse failed to point to any evidence to suggest, must less prove, that A.T. recanted or substantially modified her version of the prior rape allegation.

Because Morse did not establish that A.T. falsely accused the stranger of raping her, the trial court did not abuse its discretion in excluding evidence which had no tendency to prove anything in dispute and which would have been highly prejudicial.

---

[6] For various reasons, many acts of rape and sexual assault go unreported.  The Washington Legislature highlighted this fact in adopting the Sexual Assault Protection Order Act when it declared in pertinent part:
> Sexual assault is the most heinous crime against another person short of murder.  Sexual assault inflicts humiliation, degradation, and terror on victims.  According to the FBI, a woman is raped every six minutes in the United States. *Rape is recognized as the most underreported crime; estimates suggest that only one in seven rapes is reported to authorities.* Victims who do not report the crime still desire safety and protection from future interactions with the offender.  Some cases in which the rape is reported are not prosecuted.

RCW 7.90.005 (emphasis added).

## Preservation of Evidentiary Claim

Morse next argues that the trial court committed reversible error when it admitted, over his objection, prejudicial evidence in violation of ER 404(b).[7] As a threshold matter, the State argues that Morse failed to preserve this claim of error for appellate review.

### *Standard of Review*

An objection to the admission of evidence must generally be timely and specific to preserve the issue for appeal. ER 103(a)(1); RAP 2.5(a); State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) ("An objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review."). This is so because a timely and specific objection gives a trial court the chance to prevent or cure error "'in time to avoid unnecessary retrials.'" State v. Boast, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (quoting Haslund v. Seattle, 86 Wn.2d 607, 614, 547 P.2d 1221 (1976)).

Similarly, a party who objects to the admissibility of evidence on one ground at trial typically may not raise a different ground on appeal. State v. Mak, 105 Wn.2d 692, 718-19, 718 P.2d 407 (1986) (general objection on relevance grounds insufficient to preserve ER 404(b) past crimes issues for appeal), rejected in part on other grounds by, State v. Hill, 123 Wn.2d 641, 870 P.2d 313 (1994). However, "if the ground for objection is apparent from the context, the

---

[7] ER 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

- 11 -

objection is sufficient to preserve the issue." State v. Jones, 71 Wn. App. 798, 813, 863 P.2d 85 (1993) (citing State v. Black, 109 Wn.2d 336, 340, 745 P.2d 12 (1987)).

*Discussion*

During direct examination of a King County detective who received A.T.'s case from the Richland Police Department, the State elicited testimony about the lack of medical records for A.T. and the timeline of the police investigation into Morse. When the State asked the detective to clarify when Morse allegedly sexually assaulted A.T., the following colloquy occurred:

> Q. And when was the alleged incident, um, to have occurred? When—when was it alleged to have happened?
> A. There was one report supposedly in 2011, and then another in the spring of 2012.
> Q. Now, based on your training and—and experience, is it normal to have—
> [DEFENSE COUNSEL]: Your Honor, objection as to any prior investigation.
> THE COURT: Overruled. Go ahead.
> Q. Based on your training and experience, is it normal to have medical records or medical exams, um, when there's been that much of a time, um, lapse from the incident to the report?
> A. The only time we would want a—a medical exam with that much a lapse, if it was a young child, just to make sure that everything was okay. But when there's someone that's older, we would not expect that.

There was no further reference at trial, by either the State or Morse, about any 2011 investigation.

Though Morse now argues that the trial court should have sustained his objection to the detective's passing reference to "one report supposedly in 2011" on ER 404(b) grounds, he failed to specify the basis for his objection "to any prior investigation" at trial. Moreover, the basis for Morse's objection at trial is not

- 12 -

apparent from the context. The detective's reference to a 2011 report was unsolicited and ambiguous. The record shows that none of the other witnesses who testified, before or after the detective, ever said anything about a 2011 investigation of Morse.

For these reasons, we conclude that Morse's general objection to an isolated and ambiguous comment is insufficient to preserve the issue of an alleged ER 404(b) violation for appellate review.

We would reach the same result even if Morse had properly preserved his objection for appellate review. "'An evidentiary error which is not of constitutional magnitude, such as erroneous admission of ER 404(b) evidence, requires reversal only if the error, within reasonable probability, materially affected the outcome.'" State v. Everybodytalksabout, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002) (quoting State v. Stenson, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997)). "The error is harmless if the evidence is of minor significance compared to the overall evidence as a whole." Everybodytalksabout, 145 Wn.2d at 469. Here, we are satisfied that the detective's vague passing reference to a supposed 2011 report, without any other witness testifying about a 2011 investigation, did not materially affect the outcome. In light of the State's other evidence, and specifically A.T.'s detailed testimony about how Morse raped her, any error in admitting the challenged testimony was harmless.

Prosecutorial Misconduct

Lastly, Morse argues that the State committed prosecutorial misconduct during closing arguments and thereby violated his right to a fair trial.

*Standard of Review*

To prevail on a claim of prosecutorial misconduct, a defendant must show "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)). We review a prosecutor's statements during closing arguments in the context of the total argument, the issues in the case, the evidence addressed in closing argument, and the jury instructions. State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

Where, as here, when a defendant fails to object to alleged prosecutorial misconduct, he or she waives the issue unless the comment "was so flagrant and ill intentioned that an instruction [from the trial court] could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). In order to meet this heightened standard, a defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

*Discussion*

Morse contends the State improperly vouched[8] for A.T.'s credibility when the prosecutor stated:

---

[8] "Improper vouching occurs when the prosecutor expresses a personal belief in the veracity of a witness or indicates that evidence not presented at trial supports the testimony of a witness." Thorgerson, 172 Wn.2d at 443.

*[T]hose feelings that you had when [A.T.] was on the stand, when she cried, when she told you, "I don't want to read what happened to me again. I don't want to talk about this anymore", those feelings you had are feelings of rings of truth. It's because you felt what she was saying to you was credible. You felt what she was saying to you was truthful. And because of that, you find [A.T.] - - [A.T.] credible. Now, I'd also ask you why not come up with a simpler lie if she's lying? Why throw in a porn? Why throw in a sex toy? Why throw in alcohol? Why throw in a weekend that just conveniently Kim was out of town, you know, that I have to make sure all my other stories line up? I've been on drugs, so I'm not gonna remember that well. Why not come up with a simpler lie? All right. Unfortunately, you can't control the truth, and all she's telling you is the truth of what happened to her.*[9]

Viewing the statement in the context of the total argument and the issues in the case, we conclude that the prosecutor's statement was neither flagrant nor ill intentioned. Throughout trial, Morse attacked A.T.'s credibility.[10] In response to Morse's credibility attack, the prosecutor talked about what the jury knew or felt about A.T.'s credibility after listening to her testify. The prosecutor did not make any explicit statements of personal opinion. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) ("[P]rejudicial error will not be found unless it is 'clear and unmistakable' that counsel is expressing a personal opinion.") (quoting State v. Sargent, 40 Wn. App. 340, 344, 698 P.2d 598 1985)). Accordingly, the prosecutor's statement was proper.

Morse also argues that the prosecutor "improperly injected emotion" into the State's closing argument by the following "narrative of contrasts":

---

[9] Morse claims the emphasized portion of the prosecutor's closing improperly vouches for A.T.'s credibility.

[10] In his closing, Morse reemphasized his theory that A.T. fabricated "these horrific allegations" against him, claimed that A.T.'s and her mother's allegations "don't make sense," and argued he "should not pay the price for [A.T.] being lost."

Many young girls have memories, good memories that they hold of their father, whether it's the first father/daughter dance, going to the movies to see things like Frozen or Despicable Me, having their—as they get older, holding their father's hand while they walk down the aisle and get married, having their father in the delivery room when their child is first born, or seeing their father hold that child for the first time. Many memories that many young women have about their father. But 19-year-old [A.T.] today has a different memory. A memory from when she was 14 years old and her father raped her.

And instead of going to a movie such as Frozen or Despicable Me, the movie she remembers watching with her father deals with squirting, deals with porn, and deals with sex. She remembers—instead of that father/daughter dance, she remembers her father sticking a toy shaped like a penis inside of her. She remembers her father having her position herself on her knees so that he could enter her, and she remembers crying herself to sleep after experiencing this with her father. And because of this, the Defendant is charged with one count of rape of a child in the third degree with domestic violence.

While the State has "wide latitude to argue reasonable inferences from the facts concerning witness credibility," State v. Warren, 165 Wn.2d 17, 30, 195 P.3d 940 (2008) (holding State's closing argument that child rape victim's testimony had a "'ring of truth'" was not improper), a prosecutor must refrain from appealing to the jury's passion or prejudice.[11] State v. Belgrarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Here, the prosecutor's remarks contrasting memories that many girls have of their fathers with memories A.T. has of Morse were not made in an effort to seek a conviction on the basis of fear and anger.

---

[11] "Arguments that courts characterize as improper appeals to passion or prejudice include arguments intended to 'incite feelings of fear, anger, and a desire for revenge' and arguments that are 'irrelevant, irrational, and inflammatory . . . that prevent calm and dispassionate appraisal of the evidence.'" State v. Elledge, 144 Wn.2d 62, 85, 26 P.3d 271 (2001) (alteration in original) (quoting BENNETT L. GERSHMAN, TRIAL ERROR AND MISCONDUCT § 2-6(b)(2), at 171-72 (1997)).

Rather, the prosecutor's comparison parroted A.T.'s testimony at trial about "remember[ing] a lot of the bad things" in her past, every child wanting to have a mom and dad, and her not having a "choice not to have a dad." Morse fails to demonstrate that the prosecutor's argument was improper.

We affirm.

WE CONCUR: